CUTRER, Judge.
This appeal arises from the trial court’s judgment denying a preliminary injunction which sought to enjoin the enforcement of the second hand dealers’ licensing statute.
The facts presented in this case are as follows:
Robert Richardson is the owner and operator of a business known as “Coin and Treasure” in the city of Lafayette, Louisiana. He operates the business under a general retail occupational license.
Approximately September 1980, several law enforcement officers and other officials of Lafayette had a meeting to discuss the increase in the crime of burglary and theft in Lafayette. These officials included the chief of police, detectives, the district attorney and the revenue administrator. The principal concern of the officials was the rising theft rate of items made of precious metals and stones, especially gold and silver. They decided that they would utilize the “Secondhand Dealer’s Statute” as a *1233 means of tracing and identifying the stolen properties and the persons who may have committed the offenses.
The Secondhand Dealer’s Statute (LSA-R.S. 37:1861, et seq.)[1] requires all establishments, dealing in used or secondhand merchandise, to obtain a license and to post a bond of $300.00 in favor of the city. The statute requires that such establishments keep detailed records of all purchases including the names, addresses and descriptions of persons from whom the articles are purchased. Also, the article purchased must be described with particularity. The records of such purchases are open to inspection by the law enforcement authorities. The secondhand dealer must retain the purchased items for at least ten days before disposing of them. The statute contains a criminal sanction for the failure of a dealer to comply.
The City of Lafayette began to enforce the licensing of such establishments in October 1980. In December, Richardson was notified that he must comply with the statute by posting bond and obtaining a license for his “Coin and Treasure” shop. Richardson refused to do so. He was arrested for the violation of the statute. Richardson obtained a temporary restraining order which prohibited the police from enforcing the statute against him. This restraining order expired under its own terms. Richardson then posted the required bond and obtained a license “under protest” and filed a rule for a preliminary injunction to prevent further enforcement of the statute.
Following trial of the rule, the trial court rendered judgment dismissing the suit. Richardson appealed. We affirm.
The issues as presented for determination are as follows:
(1) Whether the statute is constitutional or in violation of Federal law;
(2) Whether Richardson was irreparably harmed by the enforcement of the statute;
(3) Whether Richardson’s business was exempt from the provisions of the statute; and
(4) Whether the City of Lafayette had the authority to enforce the statute,
CONSTITUTIONALITY OR VIOLATION OF FEDERAL LAW
Richardson contends that the Secondhand Dealer’s Statute is unconstitutionally vague. LSA-R.S. 37:1861 defines secondhand dealers to be:

“Every person in this state engaged in the business of buying, selling, trading in, or otherwise acquiring or disposing of used or second-hand property such as jewelry, silverware, diamonds, pictures, objects of art, clothing, mechanic’s tools, carpenter’s tools, automobile accessories and supplies, and other such property, is a second-hand dealer. The provisions of this Part shall not apply to the retail jewelry, automobile, furniture, and antique business.”

The Supreme Court, in Johnson v. Welsh, 334 So.2d 395, 396 (La.1976), stated:
“It is well settled that all laws are presumed to be constitutional until the contrary is made to appear, .. .. ”
From our reading of the definition provision of the statute, we do not find it to be, on its face, vague and thus unconstitutional. The statute fairly designates the class of persons which constitute secondhand dealers. The list of items therein is merely illustrative and not inclusive. Those businesses which are exempt from this statute are clearly set forth.
Even though the statute was enacted in 1926, but not enforced until 1980, does not, in and and of itself, render it unconstitutional. The purpose of the statute, to effectively regulate those persons who deal in secondhand merchandise, is the controlling factor to be considered rather than the lapse of time between promulgation and enforcement. The testimony of witnesses for the city state that the purpose of enforcing this statute was to cut down on burglaries involving items made of precious metals, especially gold and silver. This was *1234 due to the sharp price increase in the gold and silver market coupled with the easy disposal of stolen items to dealers. The statutorily required registration of those who sold the secondhand items and the ten day required waiting period before such items could be disposed of would allow law enforcement personnel time to ascertain whether the items were stolen as well as get information on the person who sold the items.
The public interest in the regulation of secondhand dealers is clearly set forth by our Supreme Court in the case of State v. Barnett, 389 So.2d 352, 356 (La.1980), where the court stated as follows:

“The present case involves an inspection system aimed at state-licensed dealers in secondhand goods. State regulation of secondhand dealers had been in effect since 1926. . . . Close scrutiny of traffic in secondhand goods is undeniably of central importance to state efforts in discouraging burglaries, thefts, and robberies, serious crimes that can be violent. Large interests are at stake, and inspection directly furthers those interests since it tends to limit access to channels through which thieves may safely convert stolen property into cash."

We conclude that this statute is not unconstitutionally vague.
Plaintiff further contends that the statute violates the United States Constitution in that it is an unauthorized regulation of interstate commerce by the state, it violates due process protections of the Fourteenth Amendment, and it is contrary to Federal law[2] which allows unrestricted purchasing and selling of gold and silver.
We find this argument to be without merit. The secondhand licensing statute, and its subsequent enforcement, does not prohibit the movement of gold and silver in interstate commerce. The only restriction by the statute upon the local movement of gold and silver, sold or bought, is that it be held for ten days by the secondhand dealer before resale or before its identity is altered. This is merely to aid law enforcement officials in determining whether the object is stolen and to help trace the person selling it.
We also find no deprivation of due process rights as the statute applies to all secondhand merchants and does not prohibit them from engaging in any activity but selling or altering the identity of any object prior to the expiration of the ten day waiting period. An appropriate governmental interest is furthered by any “differential” treatment of the secondhand merchants and other merchants. This is self-evident from the source of their goods and as reflected in the statute. Police Department of the City of Chicago v. Mosley, 408 U.S. 92, 92 S.Ct. 2286, 33 L.Ed.2d 212 (1972). The governmental interest is the stifling of crime and the recovery of stolen goods.
Further, the statute does not prohibit one from purchasing, selling, holding or dealing in gold and silver as claimed by Richardson. The only restriction is one which requires secondhand gold or silver items to be held for ten days prior to sale or alteration of its identity. This is to allow law enforcement authorities to ascertain if the item is stolen and use the business records of the dealer to discover the identity of the seller.
Richardson also contends the statute to be unconstitutional as it has been administered in a discriminatory, as well as, in an arbitrary and capricious manner. This statute, thus far, has been enforced against all secondhand dealers in gold and silver. The testimony of Police Chief Hyde stated that at the time of this suit for a preliminary injunction the enforcement of the statute was in its initial phases; the first phase was enforcement against dealers in gold and silver as there was a correlation between burglaries and the theft of these items; the *1235 second and later phases would enforce the statute against all secondhand dealers.
Thus, as no evidence was adduced in the record to show that the statute would not be enforced against all secondhand dealers, but against only those dealing in gold and silver, this portion of Richardson’s allegations is without merit. Therefore, we find that the statute was not administered dis-criminatorily nor in an arbitrary or capricious manner.
We conclude these contentions of Richardson are without merit. We find the statute to be a proper exercise of the police power of the state and the local law enforcement authorities and is constitutionally sound.
IRREPARABLE INJURY
Richardson argues that the ten day waiting period before any gold or silver items could be resold or its identity changed would cause irreparable injury due to the fluctuations in the precious metals market.
Such an interest is overriden by the strong state interest in policing this area and the resulting substantial impairment of the governmental function if this regulation is prohibited from controlling this area. State v. Barnett, supra. Furthermore, Richardson has failed to prove that the market prices will turn downward nor can he positively prove his business has declined due to the enforcement of the statute rather than due to the market in general. Without more conclusive evidence we will not impair this valid government interest and police power. This contention is without merit.
EXEMPTIONS
Richardson contends that his business is exempt from the statute as he deals primarily in antique coins.
LSA-R.S. 37:1861 exempts certain businesses from coverage under the act when it states:
“.. . The provisions of this Part shall not apply to the retail jewelry, automobile, furniture, and antique business."
Richardson testified that 60% to 80% of his business was dealing with “antique” coins. He stated that approximately 10% to 15% of the business was in jewelry and the remainder was in current coins. Richardson did not explain what an “antique” coin was in comparison to a “current” coin. Richardson’s statement that he dealt primarily in “antiques” is self-serving and the only testimony in the record in this regard. The trial judge was unimpressed with this testimony. We agree.
Furthermore, Richardson admitted that he bought used jewelry made of gold and silver, some of which he sold to be smelt-ered. His testimony in this regard is as follows:

“Q. Do you sell gold to be smelted for money that you have acquired from an individual who had purchased it from somewhere else, is that correct?

“A. What type of gold?

“Q. Any type, a ring.

“A. Yes, rings, yes.

“Q. What about a gold cross?

“A. A gold cross? Yes.

“Q. You buy that from an individual who has purchased it from somewhere else. Correct?

"A. Yes.

“Q. So you are engaged in the business of not only buying but disposing of second hand jewelry?

“A. Correct. Also new jewelry.”

It is to be noted that Richardson admitted that a sign in front of his shop stated, “We buy and sell Gold and Silver.”
Richardson has failed to prove any exemption.
AUTHORITY OF THE CITY TO ENFORCE THE STATUTE
Richardson contends that the City of Lafayette had no authority to enforce the secondhand dealers statute. We disagree. We find this statute to be a state statute and not a city ordinance. No enabling action is necessary to apply this state law to all merchants (secondhand dealers) within a municipal corporation. Richardson is charged with violations of the state statute.
*1236 To require enforceability to be predicated upon the enactment of an enabling city ordinance would defeat the purpose of state legislation; and, it would allow a city to circumvent or obviate any state regulations with which it did not agree by a refusal to promulgate the requisite city ordinance. Furthermore, the statute specifically provides that the bond of $300.00 to be posted by a business shall be made in favor of the city or parish. This indicates that the legislature intended that the city or parish shall enforce same. The argument that the city had no authority to enforce the statute is untenable and utterly without merit.
For the reasons set forth herein the judgment of the trial court is affirmed. Plaintiff-appellant, Robert John Richardson, is to pay the costs of this appeal.
AFFIRMED.
APPENDIX
LSA-R.S. 37:1861, et seq.
§ 37:1861:
“Every person in this state engaged in the business of buying, selling, trading in, or otherwise acquiring or disposing of used or second-hand property such as jewelry, silverware, diamonds, pictures, objects of art, clothing, mechanic’s tools, carpenter’s tools, automobile accessories and supplies, and other such property, is a second-hand dealer. The provisions of this Part shall not apply to the retail jewelry, automobile, furniture, and antique business.”
§ 37:1862:
“No person shall do business as a secondhand dealer in this state without having first obtained the license required by law. Any person desiring a license as secondhand dealer shall make application in writing, specifying the street number and house number of the building where the business is to be carried on. This application shall be signed by at least three property tax payers of the city or parish where the business is to be established, certifying that the applicant is of good moral character. He shall also submit with his application, a bond in favor of the city or parish, as the case may be, where the business is to be established, in the sum of three hundred dollars with security, conditioned for the due observance of all provisions of this Part.
§ 37:1863:
“If after issuance and delivery of a license under the provisions of this Part any change is made in the location of the place of business designated therein, the business shall not be conducted at the new location or under such license, until the official issuing the licenses notes the change on the license, and the superintendent of police of the city or the sheriff of the parish in which the second-hand dealer is doing business is notified in writing of the change.”
§ 37:1864:
“Every secondhand dealer as defined in this Part shall be required to maintain a book or ledger setting forth each purchase of secondhand or used merchandise when the value of any single piece of merchandise or article received shall be twenty-five dollars or more, for each single transaction. The price at which a piece of merchandise is offered for sale by a secondhand dealer shall be considered prima facie evidence of the value of the piece of merchandise. Each ledger entry shall be entered at the time of each transaction and shall contain an accurate description in the English language of the merchandise or article received including serial numbers of said objects, if distinguishable, along with the amount paid therefore.
“The name, address, sex, race, height, weight, and driver’s license number of the person or persons selling or delivering said merchandise or articles to the dealer shall be obtained and included with each ledger entry. Records of each purchase shall be preserved for a period of at least three years.”
§ 37:1865:
“The book containing the record of purchase as provided for in R.S. 37:1864 and the various articles purchased and referred to therein shall at all times be open to the inspection of law enforcement officers of the Office of State Police, or the superin *1237 tendent of police or sheriff of the parish or anyone designated by them of the city, town, or parish in which the secondhand dealer does business.”
§ 37:1866:
“Every person, licensed under the provisions of this Part shall make out and deliver to the superintendent of police of the city or town or to the sheriff of the parish in which he is doing business, every day before the hour of twelve o’clock noon, a legible and correct copy of the entries in the book mentioned in R.S. 37:1864 during the previous day. The name given by the person making a sale shall be furnished the superintendent of police or sheriff when they specially request it.”
§ 37:1867:
“No second-hand dealer shall sell or dispose of or change or destroy the identity of any goods, articles or things, purchased by him before an interval of ten days from date of purchase has elapsed.”
§ 37:1868:
“A second-hand dealer shall neither open his place of business before the hour of 7 o’clock a. m. nor keep it open after the hour of 7 o’clock p. m. except on Saturdays and during the month of December, during which time the hour of 7 o’clock p. m. shall be extended to 10 o’clock p. m.”
§ 37:1869:
“Any secondhand dealer who violates, neglects, or refuses to comply with any provision of this Part, shall, for the first offense, be fined not less than twenty-five dollars, nor more than one hundred dollars, or be imprisoned for not less than ten days nor more than thirty days, or both. For the second and subsequent offenses he shall be fined five hundred dollars, or be imprisoned for not less than thirty days, nor more than sixty days, or both. If convicted three times his license shall be revoked and he shall not thereafter be permitted to engage in the business of secondhand dealer in the state of Louisiana.”

. See Appendix attached.

. Pub.L. 93-110, Section 3(b) as amended by Pub.L. 93-373 Section 2, 88 Stat. 445, provides as follows:
“No provision of any law in effect on the date of enactment of this Act (September 21, 1973) and no rule, regulation or order in effect on the date ... may be construed to prohibit any person from purchasing, holding, selling, or otherwise dealing in gold in the limited States or abroad.”