STATE of Tennessee, Plaintiff-Appellee,

v.

James KIRKLAND, Defendant-Appellant.

Supreme Court of Tennessee.

Feb. 14, 1983.

J. Andrew Hoyal, II, Asst. Atty. Gen., Nashville, for plaintiff-appellee; William M. Leech, Jr., Atty. Gen., of counsel.

Jimmie D. Turner, Oak Ridge, for defendant-appellant.

## OPINION

BROCK, Justice.

The sole question presented for determination in this case is the constitutionality of a provision of the Scrap Jewelry and Metal Dealers Act of 1980, T.C.A. § 38–608 [hereinafter referred to as the Scrap Act]. The Scrap Act requires every person or corporation dealing "in antique, used or scrap jewelry and precious metals" to keep a log. It is required that the log be used to record "a clear and accurate description of any items of jewelry or precious metals purchased and the date and amount of money paid for said items and the name, race and residence and address of the seller." The Scrap Act further provides that the log "shall be carefully preserved without alteration and shall at all times be open to the inspection of the sheriff of the county and the chief of police or any deputy or police officer of the city or county."

The appellant failed to keep a log book and was convicted of violating T.C.A., § 38–608, which offense constitutes a misdemeanor, and was fined three hundred dollars ($300.00). The appellant seeks reversal of his conviction contending that the warrantless intrusion authorized by the Scrap Act violates the Fourth Amendment to the United States Constitution and Article I, Section 7 of the Tennessee Constitution regarding unreasonable searches. We hold that the degree of intrusion authorized by the Scrap Act, when balanced against the legislative purpose underlying its enactment, is reasonable; therefore, appellant's conviction is affirmed.

In *See v. City of Seattle,* 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967), the Supreme Court invalidated a legislative attempt to authorize warrantless administrative inspections of commercial property. The companion case of *See* also struck down a legislative scheme designed to permit warrantless administrative inspections; however, it dealt only with private dwellings. *Camara v. Municipal Court,* 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967).

In *See* the Court held "that administrative entry, without consent, upon the portions of commercial premises which are not open to the public may only be compelled through prosecution or physical force within the framework of a warrant procedure." 387 U.S. at 545, 87 S.Ct. at 1740.

*Camara* established the rule that warrantless searches of homes are generally unreasonable; *See* applied that rule with equal vigor to commercial premises.

In *Colonnade Catering Corp. v. United States,* 397 U.S. 72, 90 S.Ct. 774, 25 L.Ed.2d 60 (1970), the Supreme Court was called upon to determine whether a federal statute that imposed a fine for refusal to permit the entry of federal agents upon commercial premises was violative of the fourth amendment. The government agents in *Colonnade* forcibly entered a locked storeroom and removed bottles of liquor because they suspected a possible violation of the federal excise tax law.

The Court ruled that Congress had not authorized forcible entry in the statutes relied on by the government; however, the imposition of a penalty for not permitting a warrantless inspection was validated as a reasonable regulatory scheme in an industry (liquor) in which Congress had a long history of involvement.

Approval of the legislative scheme analyzed in *Colonnade* required that the *See* decision be distinguished. The Court stated:

"We agree that Congress has broad inspection power to design such powers of inspection under the liquor laws as it deems necessary to meet the evils at hand. The general rule laid down in *See v. City of Seattle,* (citations omitted), 'that administrative entry, without consent, upon the portions of commercial premises which are not open to the public may only be compelled through prosecution or physical force within the framework of a warrant procedure'—is therefore not applicable here." 397 U.S. at 76, 90 S.Ct. at 777.

The rationale for departing from *See* was that because of its historically pervasive involvement in regulating the liquor industry, "Congress has broad authority to fashion standards of reasonableness for searches and seizures." 397 U.S. at 77, 90 S.Ct. at 777.

The holding in *United States v. Biswell,* 406 U.S. 311, 92 S.Ct. 1593, 32 L.Ed.2d 87 (1972), signalled a further retreat from the general rule enunciated in *See.* In *Biswell* a consent search conducted pursuant to the Gun Control Act of 1968 was objected to on the ground that the statute unconstitutionally authorized warrantless searches of business premises. The Court noted that federal regulation of interstate traffic in firearms was "not as deeply rooted in history as is governmental control of the liquor industry, but close scrutiny of this traffic is undeniably of central importance to federal efforts to prevent violent crime and to assist the States in regulating the firearms traffic within their borders." 406 U.S. at 315, 92 S.Ct. at 1596. The Court weighed the competing interests of privacy and effective law enforcement and concluded "that where ... regulatory inspections further urgent federal interest, and the possibilities of abuse and the threat to privacy are not of impressive dimensions, the inspection may proceed without a warrant where specifically authorized by statute." 406 U.S. at 317, 92 S.Ct. at 1597. The conclusion that inspection of gun dealers' places of business poses only a minimal threat to privacy interests is supported by the rationale that the justifiable expectation of privacy of a dealer in firearms is lessened when he "chooses to engage in this pervasively regulated business." 406 U.S. at 316, 92 S.Ct. at 1596.

In *Colonnade, supra,* the long-standing tradition of government involvement in the liquor industry was the basis for fashioning an exception to the rule announced in *See, supra,* that warrantless inspections of commercial premises are generally unreasonable.

The exception was broadened in *Biswell, supra,* when a warrantless inspection was approved on the basis of the important fed-

eral interest in preventing violent crime through regulation of firearms; despite the fact that, historically, the gun industry had not been subject to intensive government regulation.

In *Donovan v. Dewey,* 452 U.S. 594, 101 S.Ct. 2534, 69 L.Ed.2d 262 (1981), the Federal Mine Safety and Health Act of 1977, which authorized warrantless inspections of quarries and mines, was challenged on fourth amendment grounds. A federal mine inspector issued a citation to the Waukesha Lime and Stone Company after he was told by Waukesha's president to discontinue an inspection and that it would only be allowed to proceed if a search warrant was obtained.

The federal district court granted summary judgment in favor of Waukesha's president on the ground that the fourth amendment prohibited the warrantless searches of stone quarries. The rationale for the decision was that surface quarries had only been subject to federal regulation since 1966; therefore, the long tradition of government involvement aspect, so important in *Colonnade, supra,* was absent.

The Supreme Court addressed that contention in the following manner:

"Under appellees' view, new or emerging industries, including ones such as the nuclear power industry that pose enormous potential safety and health problems, could never be subject to warrantless searches even under the most carefully structured inspection program simply because of the recent vintage of regulation." 452 U.S. at 606, 101 S.Ct. at 2542.

It is against the backdrop of the decisions discussed above that the Scrap Act must be viewed by this Court. Although regulation of the scrap jewelry and metal business is neither pervasive nor long-established, its close relative, the pawn-brokers' business, has long been regulated as an exercise of the state's "police power."[1] In *State v. Barnett,* 389 So.2d 352 (1980), a Louisiana statute allowing warrantless inspection of premises of state-licensed dealers in second-

hand goods was attacked as being violative of the fourth amendment. The Supreme Court of Louisiana upheld the constitutionality of the statute, saying:

"Close scrutiny of traffic in second-hand goods is undeniably of central importance to state efforts in discouraging burglaries, thefts, and robberies, serious crimes that can be violent. Large interests are at stake, and inspection directly furthers those interests since it tends to limit access to channels through which thieves may safely convert stolen property into cash." 389 So.2d at 356.

The rationale employed by the Supreme Court of Louisiana in upholding that state's second-hand dealers statute is persuasive and equally applicable in the case of scrap jewelry and metal dealers. If the Scrap Act "is to be effective and serve as a credible deterrent, unannounced, even frequent, inspections are essential. In this context, the prerequisite of a warrant could easily frustrate inspection. . . ." *Biswell, supra,* 406 U.S. at 316, 92 S.Ct. at 1596.

Furthermore, as in *Biswell,* inspections under the Scrap Act pose only limited threats to the dealer's justifiable expectations of privacy. When a dealer chooses to engage in this regulated business, he does so with the knowledge that his business records will be subject to inspection.

The appellant argues that "the exception of *Colonnade* is inapplicable because this industry is not such a historically pervasively regulated one." The Supreme Court has pointed out, however, that "if the length of regulation were the only criterion, absurd results would occur." *Donovan v. Dewey, supra,* 452 U.S. at 606, 101 S.Ct. at 2542.

The central concept of the fourth amendment is reasonableness, and we hold that the scheme devised by the legislature to regulate scrap jewelry and metal dealers is a reasonable one. The judgment of the trial court is, therefore, affirmed.

FONES, C.J., and COOPER, HARBISON and DROWOTA, JJ., concur.

1. The present regulations were first enacted as ch. 185, Pub.Acts, 1937.