Frank PETERMAN, Plaintiff,

Bruce Horne, Plaintiff-Appellant,

v.

Gerry COLEMAN, in his official capacity as Sheriff of Pinellas County, FL, Pinellas County, Florida, Defendants-Appellees.

No. 84-3600.

United States Court of Appeals, Eleventh Circuit.

July 9, 1985.

David E. Platte, Clearwater, Fla., for plaintiff-appellant.

Jean H. Kwall, Kwall & Rice, Joseph H. Saunders, Asst. County Atty., Clearwater, Fla., for defendants-appellees.

Before VANCE, ANDERSON and HENLEY [*], Circuit Judges.

R. LANIER ANDERSON, III, Circuit Judge:

Pinellas County, Florida, enacted Ordinance No. 84–17 on May 22, 1984, to regulate businesses that deal in second-hand goods. Appellant Horne is the owner and operator of such a business. Ordinance No. 84–17 requires appellant to maintain records relating to his purchases of used goods, describing the goods in detail and identifying the person from whom any particular item is bought. Appellant must make these records available for inspection by law enforcement officers. The ordinance further requires that dealers in second-hand goods hold items they acquire for five days before reselling them.

Appellant and two other dealers in second-hand goods filed a complaint in federal district court seeking an injunction against enforcement of Ordinance No. 84–17.[1] The sheriff of Pinellas County and Pinellas County, by and through its commissioners, were named as defendants in the action. The parties submitted memoranda of law on the appropriateness of injunctive relief, and plaintiffs filed their affidavits in which they asserted that the ordinance would impinge on their business by increasing their costs and by making potential buyers and sellers less willing to conduct business with them. Plaintiffs also submitted the affidavits of three Pinellas County residents who said that they were unwilling to comply with the identification requirements of the ordinance and that they would choose to sell their goods in adjoining counties if the ordinance were enforced.

The district court denied injunctive relief, rejecting the various constitutional challenges to the ordinance. Only plaintiff Horne appealed from the district court's order. On appeal, Horne challenges the ordinance on several constitutional grounds. We have considered each of these challenges and find none to have merit. Accordingly, we affirm the district court's order denying injunctive relief.

## DEPRIVATION OF PROPERTY WITHOUT DUE PROCESS

Appellant argues that since the ordinance's five-day holding period deprives him of his right to transfer possession of goods he has bought, his property is taken without compensation in violation of the Fifth and Fourteenth Amendments to the United States Constitution. Appellant further argues that the holding period deprives him of his property without procedural due process of law in violation of the Fourteenth Amendment.

Incidental impediments on the use of property are distinguished from more substantial effects that require compensation. "[A]cts done in the proper exercise of governmental powers, and not directly encroaching upon private property, though their consequences may impair its use, are universally held not to be a taking within the meaning of the constitutional provision." *Northern Transportation Co. v. City of Chicago*, 99 U.S. 635, 642, 9 Otto 635, 25 L.Ed. 336 (1879). Under Ordinance No. 84–17, appellant is free to transfer title

---

[*] Honorable J. Smith Henley, U.S. Circuit Judge for the Eighth Circuit, sitting by designation.

1. Similar ordinances have often been challenged on various grounds in state courts, and have almost universally been upheld. For general discussion of these so-called pawnbroker statutes, *see* 54 Am.Jur.2d *Money Lenders and Pawnbrokers* § 5 (1971); Annot., 125 A.L.R. 598 (1940).

to his property at any time. The ordinance only requires that he retain possession until the five-day holding period has expired. Pinellas County Ordinance No. 84–17 at § 2(e). Although the right to transfer possession of property is an important attribute of ownership, we cannot say that by briefly suspending this right the County has "taken" appellant's property. If indeed there is any diminution in value by virtue of a dealer's temporary inability to transfer possession, such an effect is too incidental to amount to a taking for which compensation is required under the Constitution.

Appellant's procedural due process argument is likewise without merit. Appellant relies principally on *Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972), which invalidated state statutes that allowed creditors to be awarded possession of debtors' property without notice and a hearing and prior to any judgment determining the parties' rights. The Court in *Fuentes v. Shevin* observed that "it is now well settled that a temporary, nonfinal deprivation of property is nonetheless a 'deprivation' in the terms of the Fourteenth Amendment." *Id.* at 84–85, 92 S.Ct. at 1996–97. The Court noted that "the Fourteenth Amendment draws no bright lines around three-day, 10-day, or 50-day deprivations of property. Any significant taking of property by the State is within the purview of the Due Process Clause." *Id.* at 86, 92 S.Ct. at 1997.

■ The Court in *Fuentes v. Shevin* confirmed that when a fundamental right in property, such as the right of possession, is taken under color of state law, the temporary nature of the deprivation does not remove it from Fourteenth Amendment protection. In the present case, however, the ordinance does not deprive appellant of his right to possession of his property, but only requires that possession not be transferred for five days. This temporary curtailment of one possessory interest is clearly distinguishable from the complete deprivation of possession at issue in *Fuentes v. Shevin.*

■ Even if the ordinance's holding period requirement were considered to be a deprivation in the constitutional sense, however, we can readily conclude that appellant has received all the process that is due under the circumstances. The Supreme Court has recognized that determinations that are legislative in character may satisfy due process without the requirement of individualized notice and hearing for each instance in which a deprivation occurs. *See Bi-Metallic Investment Co. v. State Board of Equalization*, 239 U.S. 441, 36 S.Ct. 141, 60 L.Ed. 372 (1915).

> General statutes within the state power are passed that affect the person or property of individuals, sometimes to the point of ruin, without giving them a chance to be heard. Their rights are protected in the only way that they can be in a complex society, by their power, immediate or remote, over those who make the rule.

*Id.* at 445, 36 S.Ct. at 142. *See also Bowles v. Willingham*, 321 U.S. 503, 519–20, 64 S.Ct. 641, 649–50, 88 L.Ed. 892 (1944); *United States v. Florida East Coast Railway Co.*, 410 U.S. 224, 244–45, 93 S.Ct. 810, 820–21, 35 L.Ed.2d 223 (1973); *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 432–33, 102 S.Ct. 1148, 1155–56, 71 L.Ed.2d 265 (1982) ("In each case, the legislative determination provides all the process that is due …").

In summary, we conclude that the five-day holding period in Ordinance No. 84–17 does not result in a "taking" of appellant's property so as to require compensation under the Fifth and Fourteenth Amendments. Furthermore, while the holding period may have some effect on one of appellant's interests in the property, we do not think this slight attenuation is a deprivation of property in the constitutional sense. To the extent that the holding period might amount to some slight deprivation, we conclude that the Pinellas County Commission in reaching its considered decision to impose the requirement furnished appellant all the process required under the Fourteenth Amendment.

FOURTH AMENDMENT SEARCH
AND SEIZURE

The challenged ordinance requires appellant to maintain a register of his transactions in second-hand goods. The register must contain an accurate description of persons from whom articles are bought, as well as an accurate description of the property acquired. The register is required to be made on forms provided by Pinellas County law enforcement authorities, and "this documentation shall be made available for inspection by any law enforcement officer employed in Pinellas County." Pinellas County Ordinance No. 84–17 at § 2(b). Appellant argues that the record-keeping requirement permits a search and seizure without probable cause in violation of his rights under the Fourth Amendment to the United States Constitution, and that the intrusion allowed is unreasonable in that the ordinance does not sufficiently limit the time and manner of official access to the registers.

 Constitutional bounds on government access to commercial premises and records have developed through a series of Supreme Court cases that start with the assumption that a search of private commercial property without proper consent is unreasonable under the Fourth Amendment unless the search is authorized by a valid search warrant. *Camara v. Municipal Court,* 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967); *See v. City of Seattle,* 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967); *Marshall v. Barlow's, Inc.,* 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978). An exception to the warrant requirement is recognized, however, in certain industries in which government regulation is pervasive. *Colonnade Catering Corp. v. United States,* 397 U.S. 72, 90 S.Ct. 774, 25 L.Ed.2d 60 (1970) (sale of alcoholic beverages); *United States v. Biswell,* 406 U.S. 311, 92 S.Ct. 1593, 32 L.Ed.2d 87 (1972) (sale of firearms). The *Colonnade-Biswell* exception has been extended by the Supreme Court to the field of mine safety, *Donovan v. Dewey,* 452 U.S. 594, 602, 101 S.Ct. 2534, 2539, 69 L.Ed.2d 262 (1981), and by lower federal courts to businesses dealing in perishable commodi-

ties, *see Wayne Cusimano, Inc. v. Block,* 692 F.2d 1025, 1028 (5th Cir.1982), and to warrantless inspection of pharmacy records, *United States v. Jamieson-McKames Pharmaceuticals, Inc.,* 651 F.2d 532, 537 (8th Cir.1981), *cert. denied,* 455 U.S. 1016, 102 S.Ct. 1709, 72 L.Ed.2d 133 (1982); *United States ex rel. Terraciano v. Montanye,* 493 F.2d 682 (2d Cir.), *cert. denied,* 419 U.S. 875, 95 S.Ct. 137, 42 L.Ed.2d 114 (1974).

The Supreme Court has recently clarified that the *Colonnade-Biswell* exception to the warrant requirement does not depend solely on there being a long history of government regulation in a given field. While agreeing that a tradition of supervision militates against imposition of a warrant requirement, the Court has observed that "it is the pervasiveness and regularity of the federal regulation that ultimately determines whether a warrant is necessary." *Donovan v. Dewey,* 452 U.S. at 606, 101 S.Ct. at 2542. *Accord, State v. Kirkland,* 655 S.W.2d 140, 141–42 (Tenn. 1983). As the Court observed in *Biswell:*

> Federal regulation of the interstate traffic in firearms is not as deeply rooted in history as is governmental control of the liquor industry, but close scrutiny of this traffic is undeniably of central importance to federal efforts to prevent violent crime and to assist the States in regulating the firearms traffic within their borders.

406 U.S. at 315, 92 S.Ct. at 1596.

Other than the instant case, we have found only two cases from federal courts addressing whether the *Colonnade-Biswell* exception applies to regulation of second-hand dealers. In *Mid-Fla. Coin Exchange, Inc. v. Griffin,* 529 F.Supp. 1006 (M.D.Fla. 1981), the court decided that the second-hand precious metal business did not have a "long history of pervasive regulation such as would justify warrantless inspections of their premises." *Id.* at 1026. Similarly, the court in *Joe Flynn Rare Coins, Inc. v. Stephan,* 526 F.Supp. 1275 (D.Kan. 1981), concluded that the "regulatory presence [with respect to precious metals deal-

ers] is not sufficiently defined that the owner is aware that his property will be subject to periodic inspections undertaken for specific purposes." *Id.* at 1285. The court in *Joe Flynn Rare Coins* also observed that "the search is in the nature of a criminal search, rather than an administrative or regulatory search. As such, it cannot be said that the search is necessary to further a regulatory scheme." *Id.*

State courts that have considered the question have generally decided that regulation of second-hand dealers does fall within the *Colonnade-Biswell* exception to the warrant requirement. *See State v. Barnett,* 389 So.2d 352, 356 (La.1980); *Kipperman v. State,* 626 S.W.2d 507, 511–12 (Tex. Crim.App.1981). In *Kipperman,* the court said:

> [T]he State's concerns with the detection of stolen property and the prevention of theft are no less important than the federal interests in the prevention of violent crimes and regulations of firearms traffic (*Biswell* ), and in the regulation of the liquor industry (*Colonnade* ). The inspection of the business records of State licensed pawn shops is essential to the State's efforts to effectively deter theft and minimize its consequences, just as the inspection of federally licensed liquor and firearms dealers is central to federal efforts to control the possible abuses in those industries.

626 S.W.2d at 511. *See also State v. Kirkland,* 655 S.W.2d 140, 142 (Tenn.1983); *State v. Norman,* 2 Ohio App.3d 159, 441 N.E.2d 292, 297–98 (1981).

█ We conclude after reviewing the above authority that the *Colonnade-Biswell* exception applies to the regulation of second-hand dealers by Pinellas County. We believe the governmental interest underlying the challenged ordinance is as compelling as the interest in firearms regulation recognized in *Biswell.* The ordinance states that regulation is "necessary to enable law enforcement authorities to impede the sale of stolen goods," Pinellas County Ordinance No. 84–17 at Preamble, and that "in order to protect and safeguard the safety, health and welfare of the people of Pinellas County, Florida, it is necessary that procedures for regulation of pawn brokers, precious metal dealers, and second-hand dealers be adopted by Pinellas County, Florida." *Id.* at § 1. Because the ordinance's requirements are of "central importance" to the County's efforts to impede the sale of stolen goods, *cf. Biswell,* 406 U.S. at 315, 92 S.Ct. at 1596, we hold that Ordinance No. 84–17 does not violate the Fourth Amendment in permitting warrantless inspection of appellant's transaction registers.

█ Finally, we must determine whether the intrusion permitted by Ordinance No. 84–17 is reasonable under the Fourth Amendment. The only inspection authorized by the ordinance relates to the transaction registers second-hand dealers are required to maintain. "This documentation shall be made available for inspection by any law enforcement officer employed in Pinellas County and certified by the State of Florida...." Pinellas County Ordinance No. 84–17 at § 2(b)(3). In light of the compelling state interest in impeding the flow of stolen goods, this intrusion is reasonable under the Fourth Amendment.[2]

█ Appellant argues vigorously that he anticipates more extensive searches than we have described. Pinellas County has stated its understanding to this court, however, that the ordinance does not require production of merchandise for inspection, but only pertains to the forms the ordinance requires to be maintained. Brief of Pinellas County at 8. Sheriff Coleman has stated his understanding that the statute does not permit entry into nonpublic portions of a second-hand dealer's premises, and Sheriff Coleman has further represented that he too does not construe the statute

---

**2.** The statutes challenged in *Joe Flynn Rare Coins* and *Mid-Fla. Coin Exchange* permitted more extensive searches and seizures than are allowed by Ordinance No. 84–17. *See* 526 F.Supp. at 1283; 529 F.Supp. at 1019. In holding that the *Colonnade Biswell* exception applies to regulation of second-hand dealers, we need not address whether those more intrusive inspection schemes are reasonable under the Fourth Amendment.

to allow law enforcement officers to examine or take possession of a dealer's merchandise. Brief of Gerry Coleman at 16–17. Because appellant has challenged only the facial validity of the ordinance in the present action, we have no occasion to consider the consequences of such more extensive searches.[3] We hold only that the ordinance as drafted does not violate appellant's Fourth Amendment rights.

## THE COMMERCE CLAUSE

Appellant argues that the ordinance's five-day holding period requirement unreasonably interferes with his ability to resell property in interstate commerce, in violation of Article 1, Section 8, Clause 3 of the United States Constitution, which confers on Congress the power to regulate interstate commerce. The criteria for determining the validity of state statutes that affect interstate commerce have been clearly stated:

> Where the statute regulates evenhandedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits.

*Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142, 90 S.Ct. 844, 847, 25 L.Ed.2d 174 (1970). Appellant argues that the effects of the holding period will be substantial and not merely incidental because out-of-state buyers will be unable to wait five days for delivery of possession. This argument does not bear up under analysis. The holding period will only delay briefly the entry of particular items into appellant's stock-in-trade. Once available for purchase, the goods will be available for both in-state and out-of-state buyers. In-state buyers might have a slightly wider range of choice because they can more easily select goods that have not yet been held for five days and return later to take delivery. Appellant has not met his burden, however, of showing that this effect on interstate commerce is more than incidental.

Appellant also argues that he must be able to resell acquired goods quickly because precious metal prices are volatile. Appellant contends that because a significant minority of his sales are to interstate buyers and are occasioned by efforts to speculate on precious metal prices, the holding period impedes this interstate aspect of his trade. We note, however, that the ordinance excludes from its definition of "precious metal" gold or silver bullion coin, and gold, silver or platinum bullion that has been assayed and is properly marked as to its weight and fineness. *See* Pinellas County Ordinance No. 84–17 at § 3(b)(3) & (b)(4). Since transactions in gold or silver bullion coin or assayed gold, silver or platinum bullion are not affected, the opportunity to take advantage of changes in precious metal prices appears substantially unaffected. The ordinance may affect appellant's sales of precious metals that are in the form of jewelry and artifacts, but this effect is local. Appellant has not demonstrated that the ordinance appreciably affects the ability of out-of-state buyers to conduct transactions in precious metals markets.

Having determined that the ordinance affects interstate commerce only incidentally, we are left under *Pike v. Bruce Church* to balance the burden imposed on interstate commerce against the putative local benefits. Pinellas County has presented Ordinance No. 84–17 as "essential to effective law enforcement," and as "necessary to enable law enforcement authorities to impede the sale of stolen goods." *See* Preamble to Pinellas County Ordinance No. 84–17. Our analysis of the likely effects of the ordinance on interstate commerce has shown that such adverse effects are largely illusory. Moreover, the putative local benefits of the ordinance are significant and readily apparent. We thus

---

**3.** In this same vein is appellant's argument that the ordinance is unconstitutional because it does not limit inspection to regular business hours. While after hours inspections might render the ordinance invalid as applied, a question we do not address, we do not think that the ordinance is fatally deficient for failing to specify hours for inspection.

have no difficulty concluding that Ordinance No. 84–17 does not violate the Commerce Clause of the United States Constitution.

## THE SUPREMACY CLAUSE

Appellant contends that Ordinance No. 84–17 violates the Supremacy Clause of the United States Constitution, Art. 6, Clause 2, in that it conflicts with the Gold Reserve Act of 1934, as amended by Act of August 14, 1974, Pub.L. No. 93–373, § 2, 88 Stat. 445, which provides that "no provision of any law … may be construed to prohibit any person from purchasing, holding, selling, or otherwise dealing with gold in the United States or abroad." Appellant contends that the ordinance's five-day holding period "prohibits … otherwise dealing with gold," contrary to the federal statute.

A state's exercise of its police power will not be considered as superseded by a federal act "unless that was the clear and manifest purpose of Congress." *Ray v. Atlantic Richfield Co.*, 435 U.S. 151, 157, 98 S.Ct. 988, 994, 55 L.Ed.2d 179 (1978). We do not read the Gold Reserve Act Amendments to evince a clear and manifest purpose to supersede Pinellas County's regulation of second-hand goods that contain gold. Furthermore, we do not interpret the ordinance to conflict with the Gold Act Amendments in any event. The ordinance does not "prohibit" transactions in gold; it only directs that possession of second-hand goods not be transferred until five days after the goods are acquired by dealers. As noted, transactions in gold bullion and in bullion coin are not affected by the statute. We conclude that Ordinance No. 84–17 does not violate the Supremacy Clause of the United States Constitution.

Appellant's remaining arguments are without merit and do not warrant discussion. For all the foregoing reasons, the district court's order denying injunctive relief is

AFFIRMED.