**CASH INN OF DADE, INC., etc., et al., Plaintiffs,**

**v.**

**METROPOLITAN DADE COUNTY, Defendant.**

No. 89–0161–CIV.

United States District Court, S.D. Florida.

Feb. 14, 1989.

Barry N. Greenberg, Carol L. Cox, Mishan, Sloto, Hoffman & Greenberg, P.A., Miami, Fla., for plaintiffs.

Roy Wood, Asst. County Atty., Miami, Fla., for defendant.

## ORDER

MARCUS, District Judge.

THIS CAUSE has come before the Court upon Plaintiffs' Motion for Emergency Preliminary Injunction filed on January 26, 1989, seeking an order preliminarily enjoining Defendant Metropolitan Dade County, its officers and agents, from enforcing or attempting to enforce the provisions of Ordinance No. 89–1—scheduled to become effective on January 27—during the pendency of this litigation. We entered an Order January 26, 1989 setting down the matter for an emergency hearing on January 27, 1989 at 1:00 p.m. and at that time we conducted an evidentiary hearing and took testimony and argument from the parties. At the conclusion of the hearing, we denied Plaintiffs' application for the reasons stated on the record. Now we enter this written Order to detail the bases for our ruling.

On January 26, 1989, Plaintiffs filed a Verified Complaint plead in two counts for Declaratory and Injunctive Relief. Count I asks this Court to enter a judgment declaring that Ordinance No. 89–1, enacted and adopted on January 17, 1989, and which amended Section 21–29 of the Code of Metropolitan Dade County, is unconstitutional, void and without force of law; Count II seeks injunctive relief, alleging that irreparable and immediate harm will result if Ordinance No. 89–1 is enforced against Plaintiffs.

At issue today is the constitutionality of Ordinance 89–1, which provides in pertinent part:

(f) Hours of Operation. No pawnshop shall engage in business within the incorporated or unincorporated areas of Dade County except between the hours of 7:00 a.m. and 5:00 p.m.

Plaintiffs contend that this provision which regulates the hours of operation of pawnshops violates the Due Process and Equal Protection Clauses of the Fourteenth Amendment and is an invalid, unreasonable, and arbitrary exercise of the police

power by the County. The Verified Complaint specifically alleges that the Plaintiffs are engaged in the business of buying, selling, trading and making loans of money upon deposit or pledge of second hand goods in Dade County, Florida, and as such constitute dealers as the term is defined in Section 21–29 of the Code of Metropolitan Dade County. Plaintiffs further aver that they have been operating in this business for many years without hourly restrictions. Some allegedly operate for 24 hours, while others operate their businesses only during normal shopping center hours, i.e., 9:00 a.m. to 9:30 p.m.

We begin our analysis by emphasizing the extraordinary nature of this injunctive remedy sought on an emergency basis. Preliminary injunctions are not granted lightly. The United States Court of Appeals for the Eleventh Circuit has held that four elements must be present before a court may issue a preliminary injunction. There must exist (1) a substantial likelihood that the plaintiff will prevail on the merits; (2) a substantial threat that plaintiff will suffer irreparable injury if the injunction is not granted; (3) a showing that the threatened injury to plaintiff outweighs the threatened harm the injunction may do to the defendant; and (4) that granting the preliminary injunction will not disserve the public interest. *See, e.g., Cunningham v. Davis,* 808 F.2d 815, 819 (11th Cir.1987); *Canal Authority of State of Florida v. Callaway,* 489 F.2d 567, 572 (5th Cir.1974) (citations omitted). In this circuit, the plaintiff has the burden of persuasion as to each of these elements. Moreover, the failure to sustain this burden with regard to *any* one of the prerequisites is fatal to the motion. *See United States v. Jefferson County,* 720 F.2d 1511, 1519 (11th Cir. 1983); *Canal Authority,* 489 F.2d at 573.

We consider first whether Plaintiffs have established a substantial likelihood of success on the merits. There can be no doubt that the proper constitutional test to be applied by a court to a review of an economic regulation like Ordinance No. 89–1 is the rational basis test. As the Supreme Court has stated in *New Orleans v. Dukes,* 427 U.S. 297, 303, 96 S.Ct. 2513, 2516–17, 49 L.Ed.2d 511 (1976):

> When local economic regulation is challenged solely as violating the Equal Protection Clause, this Court consistently defers to legislative determinations as to the desirability of particular statutory discriminations.... Unless a classification trammels fundamental personal rights or is drawn upon inherently suspect distinctions such as race, religion, or alienage, our decisions presume the constitutionality of the statutory discriminations and require only that the classification challenged be rationally related to a legitimate state interest. States are accorded wide latitude in the regulations of their local economies under their police powers, and rational distinctions may be made with substantially less than mathematical exactitude.

The Supreme Court has observed that "the judiciary may not sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines." *Id.*

Whether Plaintiffs' claims are premised upon the equal protection clause or a presumed deprivation of property without due process, the controlling standard is the rational basis test, because the classification at issue today trammels no fundamental personal rights, nor is it drawn upon any inherently suspect classifications such as race, religion or alienage. We do not suggest that the right to pursue a legitimate business enterprise is not of substantial importance, but rather that under our well-developed case law classifications such as Ordinance No. 89–1 involving economic regulation are only measured against a rational basis standard. As the Supreme Court observed in *Williamson v. Lee Optical of Oklahoma,* 348 U.S. 483, 488, 75 S.Ct. 461, 464, 99 L.Ed. 563 (1955):

> The day is gone when this Court uses the Due Process Clause of the Fourteenth Amendment to strike down state laws, regulatory of business and industrial conditions, because they may be unwise, improvident, or out of harmony with a particular school of thought.... We em-

phasize again what Chief Justice Waite said in *Munn v. State of Illinois*, 94 U.S. 113, 134, 24 L.Ed. 77, "For protection against abuses by legislatures the people must report to the polls, not to the courts."

*Id.* (citations omitted).

■ The rational basis or, as it is also known, the rational relationship test, is not an exacting one. The ordinance under scrutiny need bear only a rational relationship to the broad purposes of the ordinance. As the Supreme Court has ruled, "a statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it." *McGowan v. Maryland*, 366 U.S. 420, 426, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961).

■ Here, the prevention of criminal activity relating to the disposition of stolen goods is undoubtedly a legitimate state interest. Plaintiffs do not contest that. Instead, they argue contend that the Ordinance is not reasonably related to the state's legitimate interest in preventing crime. However, the courts have long recognized that pawnbroking, including regulating the hours of operation of pawnbrokers, is indeed properly subject to regulation under the police power of state and local government.

In *Solof v. City of Chattanooga*, 180 Tenn. 296, 174 S.W.2d 471 (1943), *rehearing*, 180 Tenn. 296, 176 S.W.2d 816 (1944), the Supreme Court of Tennessee upheld a City ordinance, much like the ordinance in controversy, that limited the operation of pawnshops to 8:00 a.m. to 6:00 p.m. In so doing, that Court stated:

We think there can be no doubt of the right of the State as well as municipalities to regulate the business of pawnbrokers in the opening and closing of such places of business, and the City of Chattanooga in passing the ordinance ... acted clearly within its right. It has been well settled that the State within the general scope of its police power may control and regulate the business or occupation of pawnbrokers.

174 S.W.2d at 471–72. That Court concluded "that the hours in which plaintiff is permitted to carry on his business is a reasonable regulation and not in violation of any of [the pawnbroker's] rights." *Id.* at 472. Similarly, in *City of Butte v. Paltrovich*, 30 Mont. 18, 75 P. 521 (1904), the Supreme Court of Montana upheld an ordinance that limited the operation of pawnshops to the hours of 7:00 a.m. and 6:00 p.m. In ruling on such an exercise of the police power, the court noted that "there is every presumption to be indulged in this instance that the City Council ... was thoroughly familiar with the peculiar surrounding circumstances, with the defects of prior regulations, and with the particular evils to be remedied." 75 P. at 522. Indeed, the Eleventh Circuit in *Peterman v. Coleman*, 764 F.2d 1416, 1421 (11th Cir.1985) recently observed that the state's power to inspect business records of pawnshops is reasonably related to its efforts to effectively deter theft and minimize its consequences. These cases suggest to us then that Ordinance 89–1, insofar as it regulates the hours of operation of pawnshops, is materially related to a legitimate state interest.

Moreover, it is not at all difficult to reasonably conceive of facts justifying this Ordinance. For instance, limiting the number of hours that pawnshops are open may make the police surveillance of pawnshop operations easier. Limiting the operation to the normal working day may also make the operation of the pawnshop more easily observed as more police may be available at that time. In addition, police observation may be more effective during the daylight hours and arguably less detectable because more people are on the streets. For these reasons, the Ordinance could conceivably serve to chill the use of the pawnshop as a means to dispose of stolen goods. We add that this Ordinance does not seek to proscribe the operations of the pawnshop, but rather only regulates the hours of operation.

Furthermore, Defendant has placed into evidence notes from the January 17, 1989 Commission meeting at which the Ordinance was approved:

Ms. Mattie Pitts, Chairman of Citizens Crime Watch in District 2, appeared be-

fore the Board in connection with and in support of the foregoing proposed ordinance. She stated young people were taking stolen property to the pawn shops in this district and selling them for drugs.

Mr. John Williams, President West Little River Heights Community Association, appeared before the Board in connection with and in support of the foregoing proposed ordinance. He noted that he was a victim of crime and alleged that pawnshops were accepting stolen goods and urged they be closed.

Pastor Jackson, New Shiloh Missionary Baptist Church, 1350 N.W. 95 Street, and President of PULSE, Peoples United League to Struggle for Equality, appeared before the Board in connection with and in support of the foregoing proposed ordinance. He expressed that pawnshops in black communities had an adverse impact on the life styles of persons living in the area.

Major Jimmy Brown, Commander, Metro–Dade Central District, appeared before the Board in connection with and in support of the foregoing proposed ordinance. He expressed concern that 70% of all pawnshops in Dade County were located within this district and that stolen goods were being received in these facilities. Major Brown stated he did not have the manpower to review all pawn slips to identify stolen goods. He referred to the surveillance made of pawnshops and expressed [the view that] there was no legitimate purpose for pawnshops to remain open after 7:00 p.m. He spoke in support of photographs being taken of customers doing business at pawnshops, noting identification cards were not effective.

[Defendant's Exhibit A]. These facts, among others, surely suggest a rational relationship between the restriction of hours and the purpose of fighting crime associated with the late-night operation of pawnshops. We underscore again that the ordinance need only bear a rational relationship to the broad purposes of the ordinance. While the ordinance may exact a needless requirement in some cases, "it is

for the legislature, not the courts, to balance the advantages and disadvantages of the new requirement." *Williamson v. Lee Optical of Oklahoma, supra,* 348 U.S. at 487, 75 S.Ct. at 464. It does not fall within the province and function of the courts to sit as superlegislative bodies to judge the wisdom and efficacy of regulatory determinations made by legislative bodies. The only issue before us today is this: whether on this brief record Plaintiffs have established a substantial likelihood of success on the merits entitling them to preliminary injunctive relief. We hold that they have not.

Plaintiffs also maintain that Ordinance 89–1 is unconstitutionally vague because the Ordinance does not anywhere define the term "pawnshop." The Fourteenth Amendment's guarantee of Due Process prohibits vague statutes:

It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined. Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application.

*Grayned v. City of Rockford,* 408 U.S. 104, 108, 92 S.Ct. 2294, 2298, 33 L.Ed.2d 222, 227 (1972) (footnotes omitted). Simple fairness requires a statute to set out prohibited conduct in terms people of ordinary intelligence can readily understand.

Here, the Ordinance does not define the term "pawnshop." Section 21–29 dealing with "secondhand dealers" provides a definition of secondhand dealers and includes

"pawnbrokers" as being secondhand dealers. However, "pawnbrokers" is not defined.

In our view, Ordinance 89–1 is not a model of clarity as it does not define the term "pawnshop." But "[t]he degree of vagueness that the Constitution tolerates ... depend[s] in part on the nature of the enactment. Thus, economic regulation is subject to a less strict vagueness test because its subject matter is often more narrow, and because businesses, which face economic demands to plan behavior carefully, can be expected to consult relevant legislation in advance of action." *Hoffman Estates v. Flipside, Hoffman Estate,* 455 U.S. 489, 498, 102 S.Ct. 1186, 1193, 71 L.Ed. 2d 362 (1982) (footnote omitted).

■ We first observe that "pawnshop" is well known to mean the shop of a pawnbroker. *See* Webster's Third New International Dictionary, 1658 (1981). A "pawnbroker" is "one that loans money on the security of personal property pledged in his keeping." *Id.* These terms are not unfamiliar to the "person of ordinary intelligence," and, we believe, give a "reasonable opportunity to know what is prohibited." *Grayned v. City of Rockford,* 408 U.S. at 108–09, 92 S.Ct. at 2298–99. Moreover, Section 715.04, Fla.Stat. defines "pawn" and "pawnbroker" as follows:

(a) "Pawn" means either of the following transactions:

1. Loan of money. A written or oral bailment of personal property as security for an engagement or debt, redeemable on certain terms and with the implied power of sale on default.

2. Buy-sell agreement. Any agreement whereby a purchaser agrees to hold property for a specified period of time to allow the seller the exclusive right to repurchase the property. A buy-sell agreement is not a loan of money.

(b) "Pawnbroker" means a person who is regularly engaged in the business of making pawns ...

These definitions provide sufficient guidance in determining what a pawnshop is. Indeed, the testimony of Mr. Miner and Mr. German, witnesses for Plaintiffs, suggests that they were well aware of the definition provided by state statute. Nonetheless, these witnesses maintained that they did not engage in pawns because the buy-sell agreements which they enter into do not provide an exclusive right to repurchase, but permit the seller to designate to someone else such as a spouse, relative or friend the right to repurchase the property. Plaintiffs' interpretation of "exclusive" is narrow and technical. On this brief record, we cannot conclude that Plaintiffs have a substantial likelihood of establishing that such a technical distinction is the most reasonable statutory construction. Rather, the term "exclusive" probably was intended to encompass a buyer assigning or designating to another the right to repurchase. We note, however, the statutory construction of Section 715.04 is not squarely before us in this lawsuit. Section 715.04 is relevant here in helping to determine whether the object of Ordinance 89–1, that is businesses that may constitute "pawnshops," are given fair warning that they may be covered by the Ordinance. On this preliminary record, we believe that sufficiently fair warning has been given to those who may be covered by Ordinance 89–1 and that reasonable standards can be referred to in order to avoid arbitrary and discriminatory enforcement. At a bare minimum, we cannot conclude that Plaintiffs have a substantial likelihood of success with their claim that the term "pawnshop" is so vague, in meaning and content, in the context of economic regulation as to render Ordinance 89–1 void for vagueness under the Due Process Clause.

■ Even if Plaintiffs had established a substantial likelihood of prevailing on the merits—and this record does not support such a finding—the possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm. *United States v. Jefferson County,* 720 F.2d 1511, 1520 (11th Cir.1983) (*citing Sampson v. Murray,* 415 U.S. 61, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974)). Here, the likelihood that the availability of money dam-

ages later in the course of litigation can make Plaintiffs whole looms large. First, the amount of business lost due to the time restrictions seems to be readily quantifiable, at least from the bare record and testimony of two witnesses called by Plaintiffs, and, therefore fully compensable by money damages. Second, damages that may be incurred as a result of employees being laid off are also capable of being fully compensated by money damages. Finally, we find Plaintiffs' argument on the record before us that the mandatory hour restrictions may cause civil disturbances to be wholly unsubstantiated and completely speculative. In sum, we do not view the potential harm that may be imposed on Plaintiffs here as of the special species required for the entry of preliminary injunctive relief.

■ The third requirement imposed by law upon a plaintiff seeking preliminary injunctive relief is a showing that the threatened injury to plaintiff outweighs the threatened harm the injunction may do to defendant. The analysis remains essentially the same. Plaintiffs seek to enjoin Dade County from enforcing or attempting to enforce Dade County Ordinance 89–1. If granted, such relief would prevent the County from implementing an ordinance passed by the duly elected Commissioners of Dade County and designed to limit crime perceived to be related to the late-night operations of pawnshops. In short, such an injunction would limit the ability of the County to fashion reasonable measures to combat criminal activity believed to be associated with pawnshop operations. We are unprepared to substitute our judgment as to the wisdom of this measure for the one rendered by the County Commission.

On the other side of the balance, a denial of the preliminary relief sought by Plaintiffs would likely result in Plaintiffs incurring reduced business as a result of the shorter hours of operation mandated by Dade County Ordinance 89–1. As noted above, however, we find this hardship to be of a purely economic nature and fully compensable later if necessary in the course of this litigation through the award of money damages. Consequently, we find that the balancing of hardships here militates heavily in favor of the County and in favor of denying the injunctive relief now sought by Plaintiffs.

■ Fourth and last, we are required by law to examine specifically the effect on the public interest. Again the tests overlap, and the conclusion is the same. A majority of Dade County's democratically-elected Commissioners have decided that it is in the public interest of Dade County to limit the time pawnshops may operate to the hours of 7:00 a.m. and 5:00 p.m. The County argues that such a time restriction is reasonably designed to reduce the amount of crime currently associated with the late-night operations of pawnshops. Indisputably, the reduction of crime in Dade County is a valid public concern, and surely it is a valid exercise of police power for a municipality to pass an ordinance designed to curb crime. Again we observe that any economic hardship that may result to Plaintiffs can be reasonably compensated at a later date by an award of money damages if Plaintiffs prevail on the merits. Granting the preliminary relief sought, however, would disserve the public interest by preventing the County from pursuing a course of action that may reduce criminal activity in the community. In short, we find that granting the preliminary relief sought here would disserve the public interest.

In sum, because we find that Plaintiffs have failed to meet the burden of establishing all four elements required for a preliminary injunction to issue, Plaintiffs' Motion for Preliminary Injunctive Relief must be and is DENIED.

DONE AND ORDERED.