**DIVERSIFIED NUMISMATICS, INC., a Florida Corporation, and Richard Eargle, Plaintiffs,**

v.

**CITY OF ORLANDO, FLORIDA, a Chartered Municipal Corporation, William L. Koleszar, in his capacity as Chief of Police for the City of Orlando, and Evelyn Sapp in her capacity as City Prosecutor for the City of Orlando, Defendants.**

No. 83–261–CIV–ORL–18.

United States District Court, M.D. Florida, Orlando Division.

March 25, 1985.

Melvin Pearlman, Fern Park, Fla., for plaintiffs.

Robert L. Hamilton, Jody M. Litchford, Dana Hankins, Asst. City Attys. (co-counsel), Orlando, Fla., for defendants.

## OPINION AND ORDER

GEORGE KENDALL SHARP, District Judge.

Plaintiff, Diversified Numismatics, Inc., brings this suit challenging the constitutionality of an Orlando, Florida City ordinance which restricts the purchase and sale of articles containing certain precious metals. Orlando City Code §§ 43.54–43.59 (1982). The matter came on for trial on the merits to the Court sitting without a jury on December 11 and 12, 1984. At the conclusion of plaintiff's case, defendants moved for a directed verdict. The Court reserved ruling on defendants' motion and at the conclusion of defendants' case took the matter under advisement.

■ A motion for a directed verdict under Rule 50(a) of the Federal Rules of Civil Procedure is proper only in jury cases. *Morris v. Prefabrication Engineering Co.*, 160 F.2d 779, 782 (5th Cir.1947). *See* 9 C. Wright & A. Miller, *Federal Practice and Procedure* §§ 2371, 2523 and 2530 (1971 & Supp.1984). In cases tried without a jury, a defendant may move for involuntary dismissal at the close of plaintiff's case pursuant to Federal Rule of Civil Procedure 41(b) on the ground that upon the facts and the law plaintiff has shown no right to relief. The facts of this case taken together with the applicable law show that plaintiffs are entitled to relief for the reasons which follow. Accordingly, defendants' motion for involuntary dismissal is DENIED.

Plaintiffs challenge the constitutional validity of the Orlando ordinance regulating the purchase and sale of precious metals on multiple grounds. As a threshold matter, plaintiffs argue that the ordinance violates the supremacy clause of the United States Constitution, because the area of precious metals has been pre-empted by federal law. Next, the ordinance is facially vague and ambiguous in violation of the Fourteenth Amendment because it does not set forth the acts prohibited and because it impermissibly delegates unrestrained authority and discretion to the Chief of Police and the City Prosecutor. Such indefiniteness and excessive delegation allows for arbitrary, capricious and discriminatory enforcement of the ordinance thereby denying plaintiffs due process and equal protection of the laws. Third, the ordinance impermissibly burdens interstate commerce in violation of the commerce clause of the Constitution. Fourth, the ordinance violates the plaintiffs' rights to be free from unreasonable searches and seizures as guaranteed by the Fourth, Fifth and Fourteenth Amendments. Fifth, it deprives plaintiffs of the privileges and immunities enjoyed by other citizens of the United States under the Fourteenth Amendment.

Sixth, the ten day holding period is a taking of property without compensation or due process of law. Finally, the ordinance deprives the plaintiffs and their customers of their rights of privacy in violation of the Ninth Amendment.

Plaintiffs seek a permanent injunction restraining all defendants or their employees and agents from enforcing compliance with the ordinance. Plaintiffs also seek declaratory relief in the nature of a declaration by the Court that the ordinance is unconstitutional. Defendants contend that the ordinance is a lawful exercise of the City's police powers, that it serves a legitimate public purpose and that it violates neither federal statutes nor the United States Constitution.

## FACTS

Plaintiff, Diversified Numismatics, Inc., is a Florida corporation having its principal place of business in Orlando, Florida. Plaintiff corporation engages in the business of buying and selling items containing gold, silver and other precious metals. Plaintiff also buys and sells numismatic coins. Prior to the enactment of the precious metals ordinance in 1981, a portion of plaintiff's business was conducted interstate. Plaintiff Richard Eargle, is an officer and employee of Diversified Numismatics, Inc.

Defendant, the City of Orlando, is a municipality of the State of Florida. At the time the complaint was filed, defendant William L. Kolezar was the Chief of Police of the City of Orlando, Florida. The parties agree that Frederick J. Walsh is the successor to Kolezar as chief of police, and is now the appropriate party. At the time the complaint was filed, defendant Evelyn Sapp was the City Prosecutor for the City of Orlando, Florida. The parties agree that John Chandler Ross is the successor to Sapp as City Prosecutor and is now the appropriate party. Walsh and Ross are substituted as defendant parties in accordance with Federal Rule of Civil Procedure 25(d).

The ordinance which is the subject of this litigation was originally enacted in 1981. Thereafter, the ordinance was amended. It is the amended ordinance, sections 43.54 through 43.59 of the City Code of the City of Orlando, Florida[1], which plaintiffs challenge as constitutionally infirm.

1.        [Precious Metals Ordinance]

Sec. 43.54. Dealing in precious metals-Definitions. For the purposes of Sections 43.54 through and including 43.59 the following definitions shall apply:
(a) Dealer. The term "dealer" shall mean any person, firm or corporation engaged in the business of purchasing or selling goods at retail or wholesale whether at a fixed place of business or as an itinerant. "Dealer" shall include owner, manager, employee or agent.
(b) Precious metal. The term "precious metal" shall mean gold, silver or platinum.
(c) Bullion coins. The term "bullion coins" shall mean fungible coins with intrinsic value greater than the numismatic value.
(d) Chief of Police. The term "Chief of Police" shall mean the Chief of the Orlando Police Department or his duly authorized designee.
(e) Orlando Police Department. The term "Orlando Police Department" shall mean any sworn law enforcement officer of the Police Department of the City of Orlando.
(f) Coins of numismatic value. The term "coins of numismatic value" shall mean coins with intrinsic value less than the numismatic value.

Sec. 43.55. Same—Registration of transactions.
(1) Any dealer shall keep a register in connection with the purchase or receipt of any old, used, or secondhand article made of precious metal, said register to be approved as to type and form by the Chief of Police. At the time of each such transaction, the dealer shall enter or cause to be entered therein an accurate description of the person from whom the article made of precious metal is purchased or received, said description to include, but not to be limited to, the name, date of birth, sex, race, place of residence, place of employment, and driver's license number, or, if none, other government identification numbers of the person, together with an accurate description of the article made of precious metal so purchase or received, which description shall contain any mark, brand, monogram, hallmark, word or letters which may be engraved, stamped, etched or otherwise permanently marked upon the article. The description of bullion coins shall be adequate if it provides the total dollar amount of each denomination. The register shall at all times be kept open and available for inspection and examination by the Police Department.

On March 18, 1982 an Orlando Police Officer entered plaintiffs' premises in an undercover capacity to ascertain if plaintiffs were complying with the provisions of the precious metals ordinance. The officer sought to sell two gold rings to Herbert Eargle, plaintiff Richard Eargle's father and an employee. Herbert Eargle purchased the items from the officer but did not complete the registration form required by section 43.55(2) of the ordinance. Thereupon, he was informed that his failure to complete the registration form violated the city ordinance. The officer issued Mr. Eargle a notice to appear in court to answer the charges. No custodial arrest ensued. The charges against Mr. Eargle were subsequently nolled; no further charges were filed and none are pending.

Plaintiffs have alleged that the Orlando precious metals ordinance is full of constitutional deficiencies. The Court, having determined that the ordinance is facially invalid for reasons which will appear, does not reach the other constitutional issues raised by the plaintiffs.

## PRE-EMPTION

■ This case arises under the Constitution of the United States, therefore this Court has jurisdiction pursuant to 28 U.S.C. § 1331. A reviewing Court begins with the principle that whenever possible a statute, or as here an ordinance, should be construed to uphold its constitutionality. *See U.S. v. National Dairy Products Corp.*, 372 U.S. 29, 32, 83 S.Ct. 594, 597, 9 L.Ed.2d 561, *reh. denied*, 372 U.S. 961, 83 S.Ct. 1011, 10 L.Ed.2d 13 (1963).

■ The ordinance *sub judice* provides that a dealer may not dispose of articles of gold, silver or platinum for a period of ten days from receipt. This means that an item may not be sold, melted, altered, transferred, given away or otherwise

(2) Any dealer shall, in keeping the register required in paragraph (A) above, require every person from whom the article made of precious metal is purchased or received to:
 (a) Sign his name on the registration form;
 (b) Submit reasonable proof of identity. That proof may include, but is not limited to, display of a driver's license or other governmental identification card or certificate; and
 (c) Provide a legible thumbprint on the registration form.
(3) It shall be unlawful for any person to give or display false identification to a dealer or to sign a false name.
Sec. 43.56. Same—Daily list to Chief of Police of articles purchased or received.
 All dealers shall furnish to the Chief of Police a complete list each day of every old, used or secondhand article of precious metal purchased or received by such dealer, giving a full description of each such article, including any mark, brand, monogram, hallmark, and any words or letters which may be engraved, stamped, etched or otherwise permanently marked upon the article, together with the name and address of the person from whom the article was purchased or received, the name of the person purchasing or receiving the property and the name of the person completing the report. Said list shall be mailed or otherwise delivered to the Police Department by not later than 12:00 Noon of the next working day following the purchase or receipt of the article.
Sec. 43.57. Same—Retention of articles purchase or received.

Except for the exempt transactions hereinafter provided, no old, used or secondhand articles made of precious metals shall be sold, melted, altered, transferred, given away, or otherwise disposed of by any dealer until ten (10) days have elapsed from the date that the article was purchased or received by the dealer.
Sec. 43.58. Same—Dealing with minors prohibited.
 It shall be unlawful for any dealer to buy, take or receive, by way of purchase or exchange, any old, used or secondhand articles made of precious metals from any person under the age of eighteen (18) years.
 43.59. Same—Exclusions.
 The following transactions shall be exempt from the provisions of Sections 43.55 through 43.58 of this Chapter:
 (1) Articles repurchased by a dealer, provided the dealer repurchases from the same person and maintains a record of the prior sale and repurchase;
 (2) Transactions between dealers, provided the article has been registered in accordance with Section 43.55 of this Chapter and held in possession of any dealer within the City for the period set forth in Section 43.57 of this Chapter;
 (3) Transactions other than those in which the seller or transferor of the article appears in person at the dealer's place of business.
 (4) The purchase or receipt of any U.S. currency, bullion coins, or coins of numismatic value.

moved from the possession and ownership of the dealer during that period.

Plaintiffs contend that gold ownership and regulation is an area which the Congress has expressed a clear, manifest intent to exclusively control. The uniform control of gold is based upon its essentially national nature. As authority for their position, plaintiffs point to Congress' repeal of Sections 3 (relating to the acquisition of gold and its use by citizens) and 4 (relating to the forfeiture penalty for violation of the act) of the Gold Reserve Act, Pub.L. 93–110, as amended by the Act of August 14, 1974, Pub.L. 93–373, 88 Stat 445. In pertinent part the 1974 legislation provides:

> (b) No provision of any law in effect on the date of enactment of this Act; and no rule, regulation or order in effect on the date subsections (a) and (b) became effective may be construed to *prohibit* any person from purchasing, holding, selling, or otherwise dealing with gold in the United States or abroad. (emphasis added).

1974 U.S.Code Cong.Ad.News 495, 496, 31 U.S.C. § 442 Repealed, note, (1976).

The ordinance at issue does not prohibit dealers from purchasing, holding, selling or dealing in gold. Its purpose is to regulate the secondhand precious metal market in order to assist law enforcement agencies in locating and identifying stolen property. This provision does not prohibit dealers from engaging in the business of buying and selling precious metals, it merely regulates the conditions under which certain transactions may occur.

## VAGUENESS

Plaintiffs attack this ordinance as vague *ab initio* in violation of the due process clause of the Fourteenth Amendment. In support of this position plaintiffs advance several grounds. First, the ordinance is unclear as to whose conduct is proscribed, which kinds of articles containing precious metal are included within the scope of the ordinance, and whether any minimum quantity of metal must be contained in an article to subject it to regulation by this ordinance. Moreover, the delegation of power to the Chief of Police and the City Prosecutor is so vague and ambiguous that it admits to unbridled discretion in the enforcement and prosecution of those who do not comply with the ordinance. Finally, the ordinance before the Court subjects those who violate it to unspecified criminal sanctions.

At this juncture, it is instructive to note that the state of Florida had a statute regulating the purchase and sale of precious metals, Fla.Stat. § 812.049 and § 812.051 (1981), which was similar to the Orlando ordinance. The Florida statute was the subject of an extensive opinion granting a preliminary injunction. *Mid-Fla. Coin Exchange, Inc. v. Griffin*, 529 F.Supp. 1006 (M.D.Fla.1981). The constitutionality of the Florida statute, however, was never determined at a trial on the merits. In March 1984, the parties dismissed the case with prejudice following substantial amendment of the statutes by the Florida Legislature. Fla.Stat. §§ 538.-01 and 538.02 (1983).[2]

2. Dade County, Florida also has an ordinance regulating the sale and purchase of second-hand articles containing precious metals. Code of Metropolitan Dade County § 21.29. The Third District Court of Appeals of the State of Florida upheld the constitutionality of the Dade County ordinance. *Jones v. Gray*, 430 So.2d 8, 9 (3d Fla.Dist.Ct.App.1983). The provisions of the ordinance were not quoted in the Court's opinion. However, the Court describes the ordinance as requiring that records containing a description of the item and the seller be kept open for inspection by law enforcement officials as well as submitted to them. There are other similarities including the prohibition of the purchase of

such goods from minors and a fifteen day holding period.

The Dade County ordinance appears in many respects to contain provisions much like those in the Orlando ordinance. The challenge in *Jones*, however, was limited to determining whether the ordinance, specifically the fifteen day holding period, was a valid exercise of the police power under Florida law and whether it constituted an impermissable burden on interstate commerce. The Court concluded that the ordinance was a valid exercise of the police power and that it was not an impermissable burden on interstate commerce. Neither *Mid-Fla. Coin* nor *Jones*, however, is binding prece-

Finally, the parties did not allege, nor was any testimony elicited at trial, that there are any administrative regulations which bear on the implementation or enforcement of the Orlando ordinance. Accordingly, the Court must proceed to review the ordinance upon its face without benefit of any limiting construction.

■ Certain principles must guide a court reviewing legislation which has been challenged as impermissibly vague. The Court has determined that the ordinance imposes, at a minimum, quasi-criminal penalties, *infra* at 147. The ordinance must therefore be reviewed under vagueness standards applicable to criminal or quasi-criminal laws. An unduly vague ordinance is one which does not meet the constitutionally mandated level of notice to citizens and guidance for law enforcement personnel. The Supreme Court recently reiterated the applicable standards:

> the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement. *Village of Hoffman Estates v. Flipside*, 455 US 489 [102 S.Ct. 1186, 71 L.Ed.2d 362] (1982); *Smith v. Goguen*, [415] US 566 [94 S.Ct. 1242, 39 L.Ed.2d 605] (1974); *Grayned v. City of Rockford*, 408 US 104, [92 S.Ct. 2294, 33 L.Ed. 222] (1972); *Papachristou v. City of Jacksonville*, 405 US 156 [92 S.Ct. 839, 31 L.Ed.2d 110] (1972); *Connally v. General Construction Co.*, 269 US 385, [46 S.Ct. 126, 70 L.Ed. 322] (1926). Although the doctrine focuses both on actual notice to citizens and arbitrary enforcement, we have recognized recently that the more important aspect of vagueness doctrine "is not actual notice, but the other principal element of the doctrine—the requirement that a legislature establish minimal guidelines to govern law enforcement." *Smith, supra*, [415] at 574, 39 L Ed 2d 605, 94 S Ct 1242 [at 1248]. Where the legislature fails to provide such minimal guidelines, a criminal statute may permit "a standardless sweep [that] allows policemen, prosecutors, and juries to pursue their personal predilections." *Id.*, at 575, 39 L Ed 2d 605, 94 S.Ct. 1242 [at 1248].

(footnote omitted). *Kolender v. Lawson*, 461 U.S. 352, 357–358, 103 S.Ct. 1855, 1858–1859, 75 L.Ed.2d 903 (1983).

## DEFINITIONAL DEFECTS

### A) What is the Penalty?

■ The City has asked the Court to view this enactment as an economic regulation and to apply a less strict vagueness test because its subject matter is narrower, *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498–500, 102 S.Ct. 1186, 1193–1194, 71 L.Ed.2d 362 (1982), and its penalties less severe than a criminal statute. The *Hoffman Estates* case concerned a law which required businesses to obtain licenses in order to sell certain items. The ordinance established the cost of obtaining such a license and provided the range of penalties possible for violation of the ordinance. *Id.*, at 507, 102 S.Ct. at 1197. The penalty provided for a fine between $10 and $500. Even though the penalty was exclusively monetary, the Court noted that the city's intention to discourage use of the regulated items as well as the availability of customer's names and addresses to the police made the standard for review that applicable to a quasi-criminal or criminal law, *id.*, at 500, 102 S.Ct. at 1194, not an economic regulation.

Review of the precious metals ordinance reveals that it does not include a section setting forth the penalty for violation of the ordinance. The defendants did not suggest that the penalty is provided elsewhere in the Code of the City of Orlando, nor did defendants provide the Court with a classification of the ordinance and the sanctions which may be imposed for violation thereof.

During the trial, Bruce Drazen, the Orlando Police Department Investigator who

---

dent because they do not pertain to the Orlando ordinance.

has primary responsibility for the enforcement of this ordinance, testified that a violation of this ordinance could result in the offending party being arrested. Moreover, he was of the opinion that failure to comply with the ordinance constituted a misdemeanor.

## B) Who is a Dealer?

The term dealer is defined in the Orlando ordinance as "any person, firm or corporation engaged in the business of purchasing or selling goods at retail or wholesale whether at a fixed place of business or as an itinerant. 'Dealer' shall include owner, manager, employee or agent." § 43.54(a). It purports to include all who engage in the business of buying or selling articles of precious metals.

However, Investigator Drazen testified that while the ordinance by its terms applies to anyone engaged in such a business, it is not enforced against used car dealers who purchase or sell cars containing catactlytic converters, nor against those who purchase or sell used televisions or those who purchase or sell x-rays or photographic precipitations, all of which contain some amount of precious metals. The ordinance is not even enforced against jewelers who take old precious metals and recast them into new pieces of jewelry.

The testimony showed that the ordinance is enforced only against precious metals dealers who purchase jewelry, silver flatware and serving pieces, and similar personal items. In sixteen know instances of non-compliance a notice to appear was issued.

## C) Who is in the Precious Metals Business?

The term precious metal is defined to include gold, silver or platinum. § 43.-54(b). Yet Drazen testified that the ordinance was not enforced against businesses, such as medical laboratories, which sell used silver from x-rays or other medical uses.

The Police Department has consistently applied this ordinance only to those who are in the business of buying and selling used personal items of precious metals. Under such a policy, it is more than possible that the very same item could be sold to two different businesses, only one of which would be required to comply with the Orlando ordinance since the Police Department would never inquire of or require compliance by a business other than one regularly engaged in buying and selling used personal items of precious metals.

## D) What Constitutes an Article?

Although the registration provision of the ordinance, § 43.55, requires that the dealer keep a register describing any articles made of precious metal which he purchases or receives, the definition section of the ordinance, § 43.54(a)-(f), does not contain any definition of such an article. Drazen testified that in connection with multi-item articles, like a flatware set, only a single registration need be completed listing how many of each sub-classifications were purchased, that is, 11 dinner forks, 13 teaspoons, etc. As a result, a dealer who failed to fill out the register in accordance with an individual officer's current interpretation of the ordinance could be subjected to unspecified criminal penalties.

## E) How Much Metal is Precious?

Further, it is unclear how much precious metal an "article of precious metal" must contain before it falls within the purview of this ordinance. A solid gold ring (24K) certainly is such an article. A 12K ring may be as well. But what if the ring is only 10K gold filled but contains a ½ carat diamond or other gemstone? The total amount of precious metal in the 10K gold-filled ring may be negligible, yet the dealer seems bound to complete the registration form on such an article. A jeweler, it seems, need not complete a registration slip because, as Investigator Drazen testified, no compliance with the ordinance would be required of a jeweler for recasting.

## F) During What Hours and for What Period Must the Register be Available?

### 1) Hours for Inspection.

The registration section provides that the register containing the information about

the items and the seller "shall at all times be kept open and available for inspection and examination by the Police Department." § 43.55(1). This provision appears to give *carte blanche* to any and all sworn law enforcement officers of the Orlando Police Department, § 43.54(f), to review, copy or take the dealer's register during any hour of the day or night anytime after the purchase of an article containing precious metal. Certainly, this is the broadest reading of the ordinance. Although the Orlando Police Department has not followed such a policy, the plain language of the ordinance admits of such a far-reaching interpretation.[3]

### 2) Retention of the Records.

Next, section 43.55(1) requires that the dealer keep a register containing information about the items purchased and the seller. The ordinance does not provide how long the dealer must retain these records. Presumably no longer than the statute of limitations period for burglary or theft. But if during a burglary a death occurred, no statute of limitations would attach. Must the dealer then retain all such records as long as he or she is in business? Moreover, since the dealer must furnish the Chief of Police a list of the items purchased or received each day, § 43.56, the need to retain the register for any lengthy period is unclear.

### G) The Holding Period

Section 43.57 of the ordinance provides that "no old, . . . articles made of precious metals shall be sold, melted, altered, transferred, given away, or otherwise disposed of by any dealer until ten (10) days have elapsed." The clear import of this section of the ordinance is that no articles shall be sold until ten days after purchase of the item. Although the City does not have an ownership interest in the items, the ordinance, contrary to defendants' initial position, expressly prohibits plaintiffs from alienating their property for this period of time.

In their memorandum in support of summary judgment, the defendants stated that the ordinance merely prohibits plaintiffs from transfering physical possession of items of precious metals. The ordinance does not restrict the dealers right to alienate his property so long as he retains physical possession of the items for the ten day period. At trial however, defendants argued that the ordinance prohibits any transfer of the property.

The stated purpose of this legislation is to inhibit the ease with which stolen items are disposed and to assist law enforcement efforts in identifying both the perpetrators of such thefts and the items taken. During closing argument defendants conceded that the City would be willing to alter the statutory language so as to allow the sale of items during the ten day holding period.

Though the City has decided that the holding provision does in fact mean what it says, its offer to alter this provision to allow the free alienation of property during the holding period is not sufficient to rectify the facial vagueness of the ordinance as a whole.

### CONCLUSION

The Orlando precious metals ordinance as now written fails to provide adequate notice to persons who may fall within the purview of the ordinance. Additionally, the ordinance does not provide minimal guidelines to govern law enforcement. *Kolender v. Lawson*, 461 U.S. at 357–358, 103 S.Ct. at 1858–1859. The ordinance is impermissibly vague in all of its putative applications. As such, the Court declares the ordinance unconstitutional *in toto*. *See Steffel v. Thompson*, 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974). The defendants or their agents or employees are therefore permanently ENJOINED from enforcing §§ 43.54 through 43.59 of the City Code of the City of Orlando.

---

**3.** Because the Court concludes that the ordinance is void for vagueness, the search and seizure issues necessarily implicated in the execution of the registration provision are not reached. *See Mid-Fla. Coin*, 529 F.Supp. at 1018–1027.

The Court cannot help but notice the similarities between §§ 43.54–43.59 and the Florida statute as originally enacted, Fla. Stat. §§ 812.049 and 812.051 (1981). The amended Florida statute, Fla.Stat. §§ 538.-01 and 538.02 (1983), addresses with greater specifity a number of the areas which this Court finds unduly vague in the Orlando ordinance.

Costs are taxed to defendants. Fed.R. Civ.P. 54(d).