**DIVERSIFIED NUMISMATICS, INC., & Richard Eargle, Plaintiffs,**

v.

**CITY OF ORLANDO, FLORIDA, Bill Frederick, individually and as Mayor of Orlando, & Dan Wilson, individually and as Orlando Chief of Police, Defendants.**

**No. 89–357–CIV–ORL–18.**

United States District Court, M.D. Florida, Orlando Division.

Sept. 6, 1990.

Gabe Kaimowitz, Winter Park, Fla., for plaintiffs.

Robert E. Bonner, Eubanks, Hilyard, Rumbley, Meier and Lengauer, P.A., Orlando, Fla., for defendants.

## ORDER

G. KENDALL SHARP, District Judge.

Plaintiffs challenge the constitutionality of the Orlando precious metals ordinance, Orlando City Code §§ 43.54–.59 (Supp. 1989). Defendants have filed four motions for summary judgment, which plaintiffs have opposed. Based on a review of the ordinance, the case file, and the relevant law, the court grants all motions.

### I. FACTS

Plaintiff Diversified Numismatics, Inc., is a Florida corporation that has its principal place of business in Orlando, Florida. It engages in the sale and purchase of numismatic coins as well as items that contain gold, silver, and other precious metals. Plaintiff Richard Eargle is an officer and employee of Diversified. In 1982, plaintiffs initiated a lawsuit alleging that the Orlando precious metals ordinance in effect at that time restricted their ability to sell and buy articles that contained precious metals. In *Diversified Numismatics, Inc. v. City of Orlando*, 615 F.Supp. 141 (M.D.Fla.1985), this court ruled that the ordinance was unconstitutionally vague, because it failed to specify any penalty for a

violation, it failed to define clearly either a precious metal or a precious metal dealer, and it failed to specify the length of time a dealer had to maintain a register of sales or the times during the day when the police could inspect that register. *Id.* at 146–48. To cure the constitutional infirmities, the court suggested that the City modify its ordinance to conform with the Florida precious metals statute, Fla.Stat. §§ 538.01–.021, *repealed by* Laws of 1989, ch. 89–533, (4). *Id.* at 149. In October 1985, the City changed its ordinance to reflect the language of the Florida statute.

In 1989, plaintiffs brought this lawsuit to challenge the amended ordinance. Along with suing the City of Orlando, plaintiffs are suing Mayor Bill Frederick because he took part in the promulgation and alleged enforcement of the amended ordinance.[1] Plaintiffs are also suing Police Chief Dan Wilson, because the police department is responsible for the alleged enforcement of the amended ordinance.

Despite the changes to the precious metals ordinance, plaintiffs claim the ordinance is still unconstitutionally vague and overbroad. Plaintiffs also claim defendants subjected them to "surreptitious investigation," "entrapment measures," "harassment," and "unwarranted intrusions ... into [their] ordinary business practices" in an attempt to enforce the ordinance. Consequently, plaintiffs allege that defendants have violated their fifth and fourteenth amendment rights to be free from an ordinance that does not state with specificity the parties and acts to be restrained, their fifth and fourteenth amendment rights to be free from unbridled police discretion in the enforcement of the ordinance, their fourth and fourteenth amendment rights to be free from warrantless searches, their fifth and fourteenth amendment rights to be free from having their property taken without just compensation, and their ninth amendment right to be free from invasions of privacy while operating a legitimate

---

1. Although plaintiffs maintain that defendants have enforced the amended ordinance against them, plaintiffs admit that no one involved with Diversified has been arrested, charged, or prose-cuted under the ordinance. This court will consider plaintiffs' complaint, therefore, as a pre-enforcement facial challenge of the amended ordinance.

business. Because plaintiffs maintain that their rights have been deprived, they want this court to declare the amended ordinance unconstitutional, to enjoin defendants from enforcing it, and to award plaintiffs damages for the injuries they have suffered.

Defendants deny having participated in any illegal activity and assert that the amended ordinance is constitutional. In their motions for summary judgment, defendants contend that plaintiffs have not satisfied the constitutional "case or controversy" requirement, that plaintiffs have not stated a claim under 42 U.S.C. § 1983 (1988), that plaintiffs have not satisfied the notice requirements under Florida law to bring their pendent state claim for tortious interference with their business relationships, and that plaintiffs cannot receive punitive damages from defendants.

## II. LEGAL DISCUSSION

### A. Standard for Summary Judgment

■ Summary judgment is authorized if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Summary judgment is appropriate only in circumstances where "the evidence is such that a reasonable jury could not return a verdict for the nonmoving party." *Id.* at 248, 106 S.Ct. at 2510; *accord Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

■ The moving party bears the burden of proving that no genuine issue of material fact exists. *See Anderson*, 477 U.S. at 248–50, 106 S.Ct. at 2510–11; *Celotex*, 477 U.S. at 324–25, 106 S.Ct. at 2553. "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary

will not be counted." *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. In determining whether the moving party has satisfied its burden, all inferences drawn from the underlying facts are considered in a light most favorable to the party opposing the motion, and all reasonable doubts are resolved against the moving party. *Id.* at 255, 106 S.Ct. at 2513; *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

As the United States Supreme Court has stated, "at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2511. In order for a triable issue to surface, enough evidence must appear in favor of the non-moving party to cause a jury to return a verdict for that party. *Id.* at 249–50, 106 S.Ct. at 2511. Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.... The moving party is[, therefore,] 'entitled to a judgment as a matter of law'...." *Celotex*, 477 U.S. at 322–23, 106 S.Ct. at 2552 (quoting *Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511).

### B. Justiciability and Standing

■ To show a "case or controversy," plaintiffs must demonstrate that they have personally "suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant[s]." *Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 99, 99 S.Ct. 1601, 1608, 60 L.Ed.2d 66 (1979). "Abstract injury is not enough. It must be alleged that the plaintiff 'has sustained or is immediately in danger of sustaining some direct injury' as a result of the challenged statute or official conduct." *O'Shea v. Littleton*, 414 U.S. 488, 494, 94 S.Ct. 669, 675, 38 L.Ed.2d 674 (1974) (quoting *Massachusetts v. Mellon*, 262 U.S. 447, 488, 43 S.Ct. 597, 601, 67 L.Ed. 1078 (1923)); *accord Maryland Casualty Co. v. Pacific*

*Coal & Oil Co.,* 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941). "The injury or threat of injury must be both 'real and immediate,' not 'conjectural' or 'hypothetical.'" *O'Shea,* 414 U.S. at 494, 94 S.Ct. at 675 (citations omitted). Plaintiffs must also show that the injury is traceable to defendants and "is likely to be redressed by a favorable decision." *Simon v. Eastern Ky. Welfare Rights Org.,* 426 U.S. 26, 38, 96 S.Ct. 1917, 1924, 48 L.Ed.2d 450 (1976). The "case or controversy" requirement applies to actions brought under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202 (1988). *Steffel v. Thompson,* 415 U.S. 452, 458, 94 S.Ct. 1209, 1215, 39 L.Ed.2d 505 (1974); *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 240–41, 57 S.Ct. 461, 463–64, 81 L.Ed. 617 (1937). Under the Declaratory Judgment Act, plaintiffs may challenge the constitutionality of the amended ordinance before they have been exposed to actual arrest or prosecution. *Steffel,* 415 U.S. at 459, 94 S.Ct. at 1216.

#### 1. Actual Injury.

■ Plaintiffs have shown some actual injury as a result of an alleged investigation of them by defendants. Plaintiff Richard Eargle claims that in 1989, Ronald Barnes, a local pawnbroker, told Steven Stilliker, a Diversified employee, that the Orlando Police Department was secretly investigating Diversified to determine whether it was violating the amended ordinance. Mr. Barnes told Mr. Stilliker that the police had fitted Steven Sidelinger with a hidden microphone and transmitter and then sent him into Diversified to gain information that the police could use to prove that Diversified was involved in illegal activity.

Mr. Eargle later confronted Mr. Sidelinger to confirm the validity of Mr. Barnes's story. Mr. Sidelinger, a regular seller of dental gold to Diversified, denied working with the police on the alleged undercover operation. But, Mr. Sidelinger thought his friend, Drew Hargraves, was impersonating him and could have been involved in the investigation of Diversified. As a consequence of the alleged undercover operation, Diversified claims to have lost busi-

ness. Arletta Rogers, a Diversified employee, refused certain precious metal transactions for fear of being arrested, and Mr. Eargle has stopped buying gold from Mr. Sidelinger.

#### 2. Threatened Injury.

Plaintiffs have also submitted affidavits showing that they were threatened with injury under the amended ordinance. In early 1990, Theresa Dice, a Diversified employee, informed Mr. Eargle that she had received a telephone call from the Orlando Police Department. The police called to determine whether Diversified was violating the amended ordinance. Mr. Eargle returned the telephone call of the police department and spoke with Joanne Wilcoxson, the department's property unit recovery investigator. Miss Wilcoxson asked Mr. Eargle to confirm whether Diversified had been buying gold and jewelry from the public without complying with the amended ordinance. She told him that Diversified would be prosecuted if the information were true. Because plaintiffs have shown that they have "suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant[s]," *Gladstone, Realtors,* 441 U.S. at 99, 99 S.Ct. at 1608, they have standing to challenge the constitutionality of the amended ordinance.

### C. *Constitutionality of the Amended Ordinance*

#### 1. Standard of Review.

■ Certain principles guide a court when it reviews legislation that is challenged for being overbroad and vague. For an ordinance to be overbroad, it must prohibit a wide range of first amendment conduct. *Members of City Council v. Taxpayers for Vincent,* 466 U.S. 789, 796–803, 104 S.Ct. 2118, 2124–27, 80 L.Ed.2d 772 (1984); *Village of Hoffman Estates v. Flipside, Hoffman Estates,* 455 U.S. 489, 495–97, 102 S.Ct. 1186, 1191–93, 71 L.Ed.2d 362 (1982). An ordinance will not be voided on those grounds unless its overbreadth is both real and substantial in relation to the

legitimate sweep of the ordinance. *Broadrick v. Oklahoma*, 413 U.S. 601, 615, 93 S.Ct. 2908, 2917, 37 L.Ed.2d 830 (1973). "In making that determination, a court should evaluate the ambiguous as well as the unambiguous scope of the enactment." *Village of Hoffman Estates*, 455 U.S. at 494 n. 6, 102 S.Ct. at 1191 n. 6. After examining the amended ordinance, this court concludes that it does not violate a broad range of protected conduct and is, therefore, not overbroad.

■■■ Although the amended ordinance is not overbroad, plaintiffs may still challenged the amended ordinance on its face as being unduly vague. For the amended ordinance to be vague, it must be unconstitutional in every conceivable application. *See Members of City Council*, 466 U.S. at 796, 104 S.Ct. at 2124; *Village of Hoffman Estates*, 455 U.S. at 494–95, 497, 102 S.Ct. at 1191, 1192. Because the amended ordinance imposes penalties of a fine and imprisonment, it must be reviewed by vagueness standards applicable to criminal or quasi-criminal laws, rather than by the less strict rational basis standard that is applied in the review of economic regulations. *Id.* at 498–99, 102 S.Ct. at 1193. As such, the court will apply the void-for-vagueness doctrine, which is an aspect of due process and requires that the meaning of a penal statute be determinable.[2]

■■■ The amended ordinance will be void for vagueness if it fails to give adequate notice to people of ordinary intelligence concerning the conduct it proscribes or if it invites arbitrary and discriminatory enforcement. *Kolender v. Lawson*, 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983). In regard to the importance a court should place on the notice and arbitrary enforcement aspects of the void-for-vagueness doctrine, the United States

Supreme Court has indicated that a court should view the arbitrary enforcement element as the more important. *Id.* at 357–58, 103 S.Ct. at 1858. "Where the legislature fails to provide such minimal guidelines, a criminal statute may permit 'a standardless sweep [that] allows policemen, prosecutors, and juries to pursue their personal predilections.'" *Id.* at 358, 103 S.Ct. at 1858 (quoting *Smith v. Goguen*, 415 U.S. 566, 575, 94 S.Ct. 1242, 1248, 39 L.Ed.2d 605 (1974)).

2. Examination of the Amended Ordinance.

Plaintiffs claim that the deprivation of their constitutional rights stems from the promulgation and alleged enforcement of the amended ordinance. They claim the City has made only "cosmetic changes" to the ordinance this court declared unconstitutional in 1985. Defendants contend, however, that the amended ordinance is modeled on the Florida precious metals statute, Fla.Stat. §§ 538.01–.021 (repealed 1989), and is thereby free of the constitutional problems the court found in the earlier ordinance.[3] In its analysis of the amended ordinance, this court will compare the amended ordinance with the earlier ordinance to determine whether the City corrected the problems that led this court to rule the earlier version void for vagueness.

*(a) Penalty Provision.*

■■■ The earlier ordinance did "not include a section setting forth the penalty for violation of the ordinance." *Diversified Numismatics*, 615 F.Supp. at 146. Hence, this court concluded that the ordinance did not notify citizens or guide law enforcement personnel regarding the punishment for violating the law. *See id.* at 146–47. The amended ordinance, however, states: "Any person violating any of the provisions of Sections 43.54–43.57 of this Code shall,

2. This court applied the void-for-vagueness doctrine when it reviewed the earlier precious metals ordinance in *Diversified Numismatics, Inc. v. City of Orlando*, 615 F.Supp. 141, 146 (M.D.Fla. 1985).

3. Although the Florida statute that served as the model for the amended ordinance has since been repealed, it was repealed for reasons other

than unconstitutionality. The current statute, Fla.Stat. §§ 538.03–.17 (1989), is broader in scope than the repealed version. The current statute includes precious metal dealers, pawnbrokers, consignment shops, et cetera. The language dealing with precious metal dealers in the current statute is similar to the language in the repealed statute.

upon conviction, be punished as provided in Section 1.08 of this Code."[4] Orlando City Code § 43.59. Thus, the amended ordinance declares "the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender*, 461 U.S. at 357, 103 S.Ct. at 1858.

### (b) Definition of a Precious Metal Dealer.

■ The earlier ordinance defined a precious metal dealer as "any person, firm or corporation engaged in the business of purchasing or selling goods at retail or wholesale whether at a fixed place of business or as an itinerant. 'Dealer' shall include owner, manager, employee or agent." Orlando City Code § 43.54(a) (repealed 1985). The court found the definition to be vague because it purported "to include all who engage in the business of buying or selling articles of precious metals," but was arbitrarily enforced. *Diversified Numismatics*, 615 F.Supp. at 147. In contrast, the amended ordinance has narrowly defined a precious metal dealer to be

> any person who buys used precious metals for resale excluding: Any person, firm or corporation the principal business of which is the retail sale of new goods and which accepts for trade-in previously owned precious metal in a transaction involving the sale of new goods, provided the traded-in precious metal was originally purchased from that person, firm, or corporation.

Orlando City Code § 43.54(2). In light of the new definition of a precious metal dealer, the amended ordinance has resolved the problem the court found in the earlier version.[5]

### (c) Definition of a Precious Metal.

■ The earlier ordinance defined precious metals as "gold, silver or platinum." Orlando City Code § 43.54(b) (repealed 1985). The court found the definition to be vague because it did not state the amount of precious metal an "article of precious metal" needed to contain before it fell within the purview of the ordinance. *Diversified Numismatics*, 615 F.Supp. at 147. The definition in the amended ordinance unambiguously defines a precious metal:

> 'Precious Metal' means any item containing any gold, silver, or platinum, or any combination thereof, excluding:
>
> (a) Any chemical or any automotive, photographic, electrical, medical, or dental materials or electronic parts.
>
> (b) Any coin with an intrinsic value less than its numismatic value.
>
> (c) Any gold bullion coin.
>
> (d) Any gold, silver, or platinum bullion that has been assayed and is properly marked as to its weight and fineness.

Orlando City Code § 43.54(1).[6] The new definition gives precious metal dealers adequate notice concerning the kinds of articles that are considered precious metals and will not encourage discriminatory enforcement.

---

**4.** Section 1.08 is a general penalty provision. Among other things, it imposes a fine not exceeding $500.00 or a term of imprisonment not exceeding 60 days or both. Orlando City Code § 1.08 (Supp.1987).

**5.** The definition of a precious metal dealer in the amended ordinance is the same as the one in the repealed Florida statute, Fla.Stat. § 538.-01(2). The current Florida statute, *id.* § 538.-03(1)(b), bears a similar definition of a precious metal dealer.

**6.** The amended ordinance contains the verbatim definition of a precious metal that appears in both the repealed Florida statute, Fla.Stat.

§ 538.01(1), and the current Florida statute, *id.* § 538.03(1)(i)(5). The City did not exclude from its definition "any coin which is mounted in a jewelry setting," which is an exclusion in both the repealed and the current Florida statutes. *Id.* § 538.01(1)(e); *id.* § 538.03(1)(i)(5). As such, in the amended ordinance, a coin that is mounted in a jewelry setting is included in the definition of a precious metal. The difference in the amended ordinance from the Florida statutes is proper; the City is free to draft a more restrictive ordinance under Florida law. *Id.* § 538.17.

### (d) Inspection of the Transaction Register.

The earlier ordinance required a precious metal dealer to keep his register of purchases "open and available for inspection and examination by the Police Department" at all times. Orlando City Code § 43.55(1) (repealed 1985). The court determined that the provision gave the Orlando Police Department too much discretion in the enforcement of the ordinance. *Diversified Numismatics*, 615 F.Supp. at 148. The amended ordinance does not include a provision for the inspection of the register, even though such a provision is included in the repealed and current Florida statutes. Fla.Stat. § 538.016; *id.* § 538.05. The deletion of the inspection provision will prevent any unbridled discretion on the part of the police department as well as any concerns regarding warrantless searches and seizures. Therefore, the City has corrected this failing of the earlier ordinance.

### (e) Length of Time a Dealer Must Retain Transaction Records.

The earlier ordinance required a dealer to keep a record of transactions, which contained information about the items purchased and the seller of those items. Orlando City Code § 43.55 (repealed 1985). The ordinance, however, did not specify the length of time a dealer had to retain the register. The court concluded that the lack of a specific time period did not notify a dealer on how to fulfill the requirements of the ordinance. *Diversified Numismatics*, 615 F.Supp. at 148. Unlike the earlier ordinance, the amended ordinance requires dealers to retain information about the seller and the precious metal for one year after the date of purchase.[7] Orlando City Code § 43.55(1). With the inclusion of the one-year time period, the City has given dealers notice regarding the length of time they must retain their records of sale.

### (f) The Holding Period after Purchase.

The earlier ordinance provided that "no old, used or secondhand articles made of precious metals shall be sold, melted, altered, transferred, given away, or otherwise disposed of by any dealer until ten (10) days have elapsed from the date that the article was purchased or received by the dealer." Orlando City Code § 43.57 (repealed 1985). This court struck down the provision as unconstitutional because it expressly prohibited plaintiffs from alienating their property for ten days after the date of purchase. *Diversified Numismatics*, 615 F.Supp. at 148.

In contrast, the amended ordinance requires a precious metal dealer to "retain possession of any precious metal purchased by him in an unaltered condition for the period of seven (7) days following the purchase." Orlando City Code § 43.56. But, the dealer has "the right ... to transfer ownership of the precious metal prior to the expiration of the required holding period, provided he retains physical possession of such precious metal for the remainder of the holding period." *Id.* Even though the amended ordinance allows a precious metal dealer to alienate property during the holding period, plaintiffs assert that the seven-day holding period constitutes a "taking" of their property without just compensation in violation of the fifth and fourteenth amendments to the United States Constitution. This court disagrees.

In *Peterman v. Coleman*, 764 F.2d 1416 (11th Cir.1985), the court of appeals addressed a second-hand goods ordinance that included a five-day holding period. The court upheld the time period because the appellant was "free to transfer title to his property at any time. The ordinance only require[d] that he retain possession until the five-day holding period ha[d] expire[d]." *Id.* at 1418–19. The court went on to say that

> [a]lthough the right to transfer possession of property is an important attribute of ownership, we cannot say that by

---

7. The repealed Florida statute also required precious metal dealers to retained their records for 1 year. Fla.Stat. § 538.011(1). The current Florida statute requires a precious metal dealer to "maintain transaction records for 5 years." *Id.* § 538.06(3).

briefly suspending this right the County has 'taken' appellant's property. If indeed there is any diminution in value by virtue of a dealer's temporary inability to transfer possession, such an effect is too incidental to amount to a taking for which compensation is required under the Constitution.

*Id.* at 1419. Even though the City's holding period is longer than the holding period addressed in *Peterman,* courts have determined that holding periods greater than seven days are constitutional. *See, e.g., Gallaher v. City of Huntington,* 759 F.2d 1155, 1160 (4th Cir.1985) (ten-day holding period is constitutional, because it does not prevent transfer of title of held property); *Joe Flynn Rare Coins, Inc. v. Stephan,* 526 F.Supp. 1275, 1281–82 (D.Kan.1981) (ten-day holding period is constitutional, because state has no proprietary interest in the held goods).

Because the seven-day holding period in the amended ordinance does not impair plaintiffs' ability to transfer title to the property during the time they hold the goods, this court rules that the holding period is constitutional. Moreover, any diminution in the value of the property during the holding period would be "too incidental to amount to a taking for which compensation is required under the Constitution." *Peterman,* 764 F.2d at 1419; *see also Joe Flynn Rare Coins,* 526 F.Supp. at 1282 (argument that held goods would diminish in value is speculative; depending on market conditions, the value of the goods could either increase or decrease during the holding period).

### (g) Notice to the Orlando Police.

██ As in the earlier ordinance, the amended ordinance requires precious metal dealers to give a copy of the transaction forms to the Orlando Police Department within twenty-four hours of any purchase of a precious metal. Orlando City Code § 43.55(2). This provision gives the police six-days before the end of the holding period to determine whether an item was stolen, to secure a search warrant, and to have the recent victims of theft view the item. Because the ordinance no longer allows police to inspect a dealer's register at will, this provision enables the police to fulfill the legitimate interest of the City to block the flow of stolen goods into the stream of commerce and thereby lessen the likelihood that they will become more difficult to trace and to recover. *See Peterman,* 764 F.2d at 1421; *Diversified Numismatics,* 615 F.Supp. at 148. As such, the provision is a reasonable restriction on dealers. The procedure a dealer must follow is clear, and the provision will not encourage discriminatory or arbitrary enforcement of the amended ordinance.

### (h) A "Coin Dealer" Exception.

██ Plaintiffs seek a "coin dealer" exception to the amended ordinance. Plaintiffs maintain that such an exception is part of the precious metal law of Florida. Although the State of Florida exempts coin dealers from its precious metals statute, Fla.Stat. § 538.03(2)(g), the State also allows municipalities to enact more restrictive precious metals ordinances. *Id.* § 538.17. Because the law of Florida allows the City to include or exclude coin dealers from its precious metals ordinance, the City may use its discretion to draft the ordinance in a way that reasonably fulfills its objective of preventing crime, identifying criminals, and returning stolen property. Moreover, the definition of a precious metal dealer in the amended ordinance is unambiguous; coin dealers are considered dealers of precious metals.

Because the inclusion of coin dealers does not violate a fundamental right of plaintiffs, "the burden is not upon the [City] to establish the rationality of its restriction, but is on the challenger to show that the restriction is wholly arbitrary." *Karr v. Schmidt,* 460 F.2d 609, 616–17 (5th Cir.) (en banc), *cert. denied,* 409 U.S. 989, 93 S.Ct. 307, 34 L.Ed.2d 256 (1972). Nothing in the case file shows that the City acted in an arbitrary fashion when it included coin dealers in the amended ordinance. In addition, because the City could have reasonably found that the inclusion of coin dealers would better achieve the ends of the ordinance, the City's decision will not

be set aside. *See McGowan v. Maryland,* 366 U.S. 420, 426, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961).

### (i) Miscellaneous Sections.

Plaintiffs also challenge the constitutionality of sections 43.57–.58 of the amended ordinance. Section 43.57 provides that "[n]o precious metals dealer may purchase any precious metal from any person under 18 years of age, unless such person is accompanied by his parent or guardian and unless both the person and the parent or guardian sign the dealer's record pursuant to Sec. 43.55(1)(a)." [8] Section 43.58 exempts three kinds of transactions from the amended ordinance. Section 43.58(1) allows a dealer to repurchase an article of precious metal, "provided the dealer repurchases from the same person and maintains a record of the prior sale and repurchase." Section 43.58(2) allows a dealer to transact business with other dealers, "provided the article has been previously once reported in accordance with Section 43.55 of this Chapter and held in possession of any dealer within the City for the period set forth in Section 43.56 of this Chapter." Section 43.58(3) allows a dealer to engage in "[t]ransactions other than those in which the seller or transferror of the article appears in person at the dealer's place of business."

This court concludes that sections 43.57–.58 clearly apprise precious metal dealers about the kinds of transactions in which they may engage. The sections also will not encourage arbitrary and discriminatory enforcement of the amended ordinance. *See Kolender,* 461 U.S. at 357, 103 S.Ct. at 1858.

### (j) Summary.

The City has corrected the constitutional problems the court found in the earlier ordinance. The amended ordinance gives adequate notice to people of ordinary intelligence about the proscribed behavior, it does not invite arbitrary and discriminatory

enforcement, and it does not reach constitutionally protected conduct. *See Members of the City Council,* 466 U.S. at 796, 104 S.Ct. at 2124; *Kolender,* 461 U.S. at 357, 103 S.Ct. at 1858; *Village of Hoffman Estates,* 455 U.S. at 502–05, 102 S.Ct. at 1195–97. Therefore, the amended ordinance is not void for vagueness. As a result of the amended ordinance being constitutional, its enforcement would not have deprived plaintiffs of their rights under section 1983. *See Gomez v. Toledo,* 446 U.S. 635, 638–40, 100 S.Ct. 1920, 1922–23, 64 L.Ed.2d 572 (1980); *Monell v. Department of Social Servs.,* 436 U.S. 658, 690–91, 98 S.Ct. 2018, 2035–36, 56 L.Ed.2d 611 (1978). Thus, this court grants defendants' motions for summary judgment on Count I of plaintiffs' complaint.

### D.  The Pendent State Law Claim

In Count II of their complaint, plaintiffs allege a common law claim against defendants for tortious interference with their business relationships. Defendants contend, however, that plaintiffs cannot bring this pendent claim because they have not fulfilled the notice of claim requirements under Florida law. Defendants also maintain that Mayor Frederick and Chief Wilson are immune from such a lawsuit in their individual capacities.

> 1.  The City and Mayor Bill Frederick and Chief Dan Wilson in their Official Capacities.

Under Florida law, a plaintiff must satisfy certain conditions before instituting "a claim against the state[,] ... one of its agencies or subdivisions," Fla.Stat. § 768.-28(6)(a) (1989), or against a municipal official in his official capacity. *Lloyd v. Ellis,* 520 So.2d 59, 60 (Fla.Dist.Ct.App.1988). First, a plaintiff must present "the claim in writing to the appropriate agency...." Fla.Stat. § 768.28(6)(a). Second, "except as to any claim against a municipality, ... [a plaintiff must present] such claim in writing to the Department of Insurance, within

---

**8.** The language in the amended ordinance was taken directly from the repealed Florida statute, Fla.Stat. § 538.014. The current Florida statute

prohibits precious metal dealers from transacting business with "[a]ny person under the age of 18 years" without exception. *Id.* § 538.15(1)(b).

3 years after such claim accrues and the Department of Insurance or the appropriate agency denies the claim in writing; ..." *Id.*

■ Satisfaction of the Florida notice requirements is a condition precedent to maintaining a lawsuit, and the complaint must contain an allegation that such notice was given. *Commercial Carrier Corp. v. Indian River County,* 371 So.2d 1010, 1022–23 (Fla.1979); Fla.Stat. § 768.28(6)(b) (1989). A complaint that is brought without first providing statutory notice must be dismissed with leave for plaintiff to amend his complaint to allege compliance with the notice requirement. *Commercial Carrier Corp.,* 371 So.2d at 1023; *Thigpin v. Sun Bank,* 458 So.2d 315, 316 (Fla.Dist.Ct.App. 1984). Because plaintiffs did not state in their complaint whether they have satisfied the notice of claim provisions of section 768.28(6), Count II against the City and against the Mayor and Chief in their official capacities is dismissed. This court will not maintain jurisdiction over this pendent state claim, because it has determined that no federal issues are raised in this lawsuit. *See United Mine Workers v. Gibbs,* 383 U.S. 715, 725–27, 86 S.Ct. 1130, 1138–39, 16 L.Ed.2d 218 (1966).

This court's dismissal of Count II is distinguished from the holding in *Majette v. O'Connor,* 811 F.2d 1416 (11th Cir.1987) (per curiam). In *Majette,* the court of appeals reviewed a district court's dismissal of a case with prejudice because the plaintiff did not comply with the notice provisions of section 768.28(6) of the Florida Statutes. Viewing the Florida notice provision as an administrative remedy, the court of appeals reversed the district court's action. The court held that "[e]xhaustion of state administrative remedies is not a prerequisite to bringing a section 1983 action." *Id.* at 1418. In the case at hand, however, this court retained jurisdiction over the section 1983 claim against defendants. Therefore, dismissal of the state law claim without prejudice did not require plaintiffs to exhaust their state administrative remedies before bringing their section 1983 suit. *See Brown v. City of Miami Beach,* 684

F.Supp. 1081, 1084 (S.D.Fla.1988) (dismissal of pendent claim under section 768.28(6) proper because state substantive law controlled the claim).

2. Mayor Bill Frederick and Chief Dan Wilson in their Individual Capacities.

■ The notice requirements in section 768.28(6) do not apply to plaintiffs' cause of action against Mayor Frederick and Chief Wilson in their individual capacities. *See Lloyd,* 520 So.2d at 60. Even so, the Mayor and Chief are protected from suit in their individual capacities, because neither man may "be held personally liable in tort ... for any injury or damage suffered as a result of any act ... in the scope of [their] employment or function, unless ... [they] acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." Fla.Stat. § 768.28(9)(a) (1989). Plaintiffs have not produced any evidence to show that either defendant acted in bad faith in the promulgation or alleged enforcement of the amended ordinance. The evidence presented by defendants does not suggest a contrary conclusion. Summary judgment is, therefore, granted for the Mayor and Chief in their individual capacities on Count II of plaintiffs' complaint. *See Carpenter v. City of St. Petersburg,* 547 So.2d 339, 341 (Fla. Dist.Ct.App.) (summary judgment under section 768.28(9) appropriate because no showing of bad faith or malice), *rev. denied,* 554 So.2d 1167 (Fla.1989).

*E. Punitive Damages*

As a consequence of this court having disposed of Counts I and II of plaintiffs' complaint, it does not need to determine whether plaintiffs could receive punitive damages from defendants.

### III. CONCLUSION

Plaintiffs have standing to challenge the constitutionality of the amended precious metals ordinance. After reviewing the Orlando City Code §§ 43.54–.59 (Supp.1989), this court concludes that the ordinance on its face is neither overbroad nor vague

because it does not reach constitutionally protected conduct, it is reasonably clear in its application to plaintiffs, and it will not encourage arbitrary or discriminatory enforcement. The amended ordinance is not phrased in such a manner that an ordinary person would have to guess at its meaning. As such, plaintiffs could not carry their burden at trial of showing that the promulgation and alleged enforcement of the amended ordinance deprived them of their constitutional rights under 42 U.S.C. § 1983.

Moreover, plaintiffs did not comply with the relevant notice provisions under Florida law to bring their pendent claim against the City of Orlando and against Mayor Bill Frederick and Chief Dan Wilson in their official capacities; plaintiffs' pendent state law claim is, therefore, dismissed. This court declines to exercise its pendent jurisdiction in this matter. Because no evidence of bad faith or malice appears in the case file, plaintiffs cannot bring their pendent claim against the Mayor and Chief in their individual capacities.

This court concludes that the undisputed facts and the reasonable inferences drawn therefrom do not establish a genuine issue of material fact that would warrant bringing this lawsuit to trial. Accordingly, this court GRANTS summary judgment in favor of the City of Orlando, Mayor Bill Frederick, and Chief Dan Wilson in regard to Count I of plaintiffs' complaint. The court also GRANTS summary judgment in favor of Mayor Frederick and Chief Wilson in their individual capacities with respect to Count II of plaintiffs' complaint. Plaintiffs' claims in Count II against the City and against Mayor Frederick and Chief Wilson in their official capacities are DISMISSED.

It is SO ORDERED.